**John RASKIEWICZ, Plaintiff, Appellant,**

**v.**

**The TOWN OF NEW BOSTON, et al., Defendants, Appellees.**

**No. 84–1154.**

United States Court of Appeals, First Circuit.

Argued Nov. 8, 1984.

Decided Feb. 7, 1985.

Ronald F. Kehoe, Boston, Mass., with whom Samuel Adams, Susan S. Dunn, Christopher E. Nolin, Warner & Stackpole and Thomas F. Sullivan, Boston, Mass., were on brief for plaintiff, appellant.

Leslie C. Nixon, Manchester, N.H., with whom David L. Nixon and Brown & Nixon Professional Association, Manchester, N.H., were on brief for Town of New Boston.

Eugene M. Van Loan, III, Manchester, N.H., with whom Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., was on brief for Manchester Redimix and Norman Bissonnette.

Rodney L. Stark, Manchester, N.H., with whom Stark & Peltonen, P.A., Manchester, N.H., was on brief for Patricia L. (Getman) Andrews.

Before CAMPBELL, Chief Judge, McGOWAN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiff John Raskiewicz appeals from a decision of the United States District Court for the District of New Hampshire granting defendants' motions for summary judgment and ordering Raskiewicz and his counsel to "equally recompense all defendants for their expenses and reasonable attorneys['] fees." In reviewing the district court's grant of summary judgment, we explore the record in some detail, setting forth the facts in the light most favorable to Raskiewicz, who is the party opposing the summary judgment motion. We emphasize that the following summary is not intended to be a complete statement of what actually happened, but only a selective version of record materials tailored, where possible, in Raskiewicz's favor.

A resident of Nashua, New Hampshire, Raskiewicz is in the logging and logging supply business. In 1964, he purchased approximately 109 acres of land situated on Route 13 in the Town of New Boston, New Hampshire, for $4,000. The property is dominated by an esker, or ridge, composed of sand and gravel suitable for excavation and sale. The only activity Raskiewicz conducted on the New Boston property was the removal of timber, but he states that he intended to excavate and sell the gravel and sand and then to develop the leveled property for residential or commercial uses.

In 1972, New Boston passed an "Ordinance to Regulate Removal of Earth Products in the Town of New Boston." The ordinance prohibits removal of earth products in the town except with a permit from the Board of Selectmen. It also specifies requirements to be met and factors for the Board to consider but does not require the Board to issue a permit. The ordinance provides that a permit will be valid only for 12 months from the date of issuance, although the Board may approve renewals if certain conditions are met. The Board granted gravel removal permits to individuals and businesses in New Boston both before and after Raskiewicz unsuccessfully attempted to obtain a permit.

Raskiewicz first applied for a permit in March 1974. He inquired of the Board about the formalities of the permit process and was assisted by the Board in filling out the required form. In accordance with the ordinance, the Board held a public hearing on Raskiewicz's application on May 2, 1974. The Board did not reach a decision at the hearing because a question arose about the location of a proposed driveway from Raskiewicz's property to the highway. The Board scheduled a second hearing for May 16, 1974, which was rescheduled at Rask-

---

* Of the District of Columbia Circuit, sitting by designation.

iewicz's request for June 6, 1974. At the second hearing, the Selectmen, town residents, and Selectman Nickerson from Goffstown, New Hampshire, raised numerous new objections relating to potentially damaging effects Raskiewicz's plan might have on the water table in the area, the amount of truck traffic on Route 13, silt erosion into a nearby river, the water levels in wells on Raskiewicz's property, and the scenic beauty of the area. Raskiewicz understood the continued hearing to be solely concerned with the location of the driveway, and he therefore was not prepared to meet these new objections. Although Raskiewicz offered to respond to the objections after obtaining experts' analyses, the Board refused to continue the permit hearing until a later date. On June 13, 1974, the Board notified Raskiewicz that his application was denied. Raskiewicz then filed a written request for a rehearing on June 28, which the Board denied without explanation on July 12, 1974. In June 1974, Raskiewicz also requested that the Board provide him with certain public records and minutes of Board meetings related to his application for a permit. Raskiewicz renewed his request in July and made repeated attempts to view the records. No documents were produced until April 1975.

In August 1974, Raskiewicz filed a petition for declaratory judgment and appeal from the Board's decision on his motion for rehearing in the Hillsborough County Superior Court, naming as defendants Harold Strong, George Hawkins, and Roland Sallada, as individuals and as the Selectmen for the Town of New Boston. *Raskiewicz v. Strong*, No. E–1329. Raskiewicz claimed that the earth products removal ordinance was adopted in violation of New Hampshire law and, as applied, amounted to a taking of his property without just compensation. He also contended that the Board's decision was "unreasonable and unlawful, arbitrary and capricious and contrary to the facts as stated." Finally, Raskiewicz argued that the ordinance did not apply to him because he intended to construct non-commercial buildings on his property after the esker was leveled and that the extraction was therefore exempt from the terms of the ordinance.

In October 1974, 28 townspeople filed motions to intervene on behalf of the Selectmen in Raskiewicz's state court action. In spite of Raskiewicz's opposition, the court allowed the motion as to 19 of the townspeople. The only action taken by the intervenors in the state court litigation appears to be a motion for discovery from Raskiewicz filed on September 4, 1975, which motion was later waived by agreement on October 10, 1975. On February 25, 1976, counsel for the intervenors moved to withdraw from the case "because the said intervenors have indicated to counsel that they do not wish further representation in [the] matter." After the superior court granted counsel's motion on April 6, 1976, the intervenors apparently ceased participating in the state litigation.

On April 6, 7, 8, and 13, 1976, a master heard testimony in the state court proceeding. During these hearings, Lars Ohman was in the courthouse hallway waiting to be called to testify for Raskiewicz when Selectman Roland Sallada approached him and stated to him "that John Raskiewicz would never be given a gravel permit."[1] On April 22, 1976, the master issued an order stating that "the parties have agreed to further negotiate and the petitioner will file a new application with the Town of New Boston for a permit to remove sand and gravel. It is further agreed that the case may be continued."

The negotiations proved unsuccessful, according to Raskiewicz, because of the Board's failure to cooperate. Raskiewicz applied for further hearings. The master held a hearing on June 28, 1977, as a result

---

1. Raskiewicz also states in his affidavit that "[w]hile my case was pending in the Hillsborough Superior Court, I was approached by Roland Sallada, who at that time was a selectman for the Town of New Boston, and he informed me that I would never be given a permit to remove sand and gravel from my land." At argument, Raskiewicz's counsel concentrated on Sallada's alleged statement to Ohman.

of which he recommended an order to the state court "to which there is no objection." The order provided a timetable by which (1) Raskiewicz would submit a "written detailed proposal" for his gravel removal operation; (2) the Town would notify Raskiewicz of its "specific areas of concern, additional information required and, to the extent possible, what conditions they are considering as applying to the permit"; (3) Raskiewicz would respond to the Board's problems; and (4) the Board would render a decision. The order also provided that "[i]n the event that the parties are unable to reach an accord under this order, the recessed hearing shall be rescheduled upon the request of either party ...." On July 8, 1977, the court approved the order, and the "Decree [was] entered accordingly." Although the parties at argument seemed unsure as to the exact procedural posture of the state court action, the docket in that case shows that judgment was entered on September 6, 1977.

Raskiewicz submitted a detailed plan outlining his proposed gravel operation, but the Board refused to grant him a permit on the basis of this plan in September 1977. That same month, the Board sent to Raskiewicz 47 questions concerning his application; Raskiewicz responded to the questions in November. The parties continued to negotiate until January 10, 1978 when the Board offered Raskiewicz a permit subject to a number of terms and conditions. Among the conditions of the permit was a requirement that Raskiewicz dismiss his legal action against the Board in the Hillsborough Superior Court. Raskiewicz agreed to the Board's requirements but requested that certain changes be made in the terms and conditions of the proposed permit.

On May 24, 1978, the Board notified Raskiewicz that it accepted certain of his amendments and that "the permit has now been issued to become effective July 1, 1978 and to expire June 30, 1979. The change in date has been made to allow you adequate time to review this matter. It is our understanding of the Order of the Hillsborough County Superior Court that this amended permit, if acceptable to you, will serve to terminate the pending litigation."

Raskiewicz agreed to the Board's amendments but changed the dates of the permit to July 1, 1979 and June 30, 1980, to allow him to prepare his gravel removal operation. The Board waited seven months before deciding that this was an unauthorized change and that nothing further was to be done with Raskiewicz's application at that time. During 1978, Raskiewicz states that he made numerous attempts to discover and comply with the requirements of the Board, but the Board refused to issue the permit or give Raskiewicz any guidelines as to what he had to do to secure the permit.

In April 1979, Raskiewicz and his counsel met with the Selectmen and agreed to commence further negotiations. Raskiewicz states that the Board subsequently refused to comply with this April agreement. As a result, in July 1979, Raskiewicz requested that the state court master conduct another hearing. The state court apparently never acted on Raskiewicz's request, and he apparently did not pursue it.

On August 14, 1979, the Board again issued Raskiewicz a permit, subject to all the terms and conditions of the May 24, 1978 permit and effective from September 1, 1979 to September 1, 1980. Raskiewicz states that he refused the permit because he felt that the condition forcing him to dismiss his state court suit was illegal and unconstitutional.

Raskiewicz contends that "[w]orn down by enduring actions causing harassment and obstruction," he "reasonably concluded that nothing he did would cause the town selectmen to issue him the said permit." He therefore retained a real estate broker to sell the property in the summer of 1979. His broker informed Raskiewicz that because buyers would assume that the Board would not issue a permit to extract gravel and sand from the property, the value of the land was lower than it would have been had Raskiewicz secured a permit.

Raskiewicz's broker contacted Manchester Redimix Concrete, Inc. ("Redimix"), which had had no prior involvement with Raskiewicz or the town according to the uncontested affidavits of Redimix's President, Norman E. Bissonnette, its Vice President who conducted the negotiations with Raskiewicz, Peter Dowling, and Selectmen Todd and Mansfield. Redimix is a New Hampshire corporation with its principal place of business in Manchester, New Hampshire.

Raskiewicz asserts that when he first met with Bissonnette, he told Bissonnette of his five-year struggle to obtain a permit. Raskiewicz states that Bissonnette

> told me this was not a problem for him. He made other statements to the effect that his lawyer had talked with the attorney for the Town of New Boston. I also told him that Selectman Nickerson of Goffstown had objected to my receiving a permit. He told me that Goffstown had been taken care of. Mr. Bissonnette offered me only one price on a take it or leave it basis. Also he would not pay me the full purchase price but only a down payment and the remainder to be paid over 3 years at 6% interest. He told me I had better take his offer because no one else would buy my property because of my inability to obtain a permit to remove sand and gravel. He made statements to the effect that he and his company would have no problem obtaining a permit. When I objected to the low price and unfair terms of this proposal concerning the down payment and the re-

mainder over 3 years at only 6% interest he said take it or leave it.[2]

In December 1979, Redimix purchased Raskiewicz's property for $217,000. Raskiewicz contends that the actual fair value of his land, based on the amount and quality of the sand and gravel on it, was "in the millions of dollars."

On March 20, 1980, a representative of Redimix attended a New Boston Selectmen's meeting to inquire about obtaining a permit for excavation on the Raskiewicz property. In March 1980, the Selectmen were Thomas Mansfield, Merrill Todd, and Ray Lowell (now deceased). Neither Mansfield nor Todd recall having any contact with Redimix before that date. The minutes of the meeting provide that the representative sought "to be advised whether the Raskiewicz Gravel Removal Permit could be changed to the Manchester Redimix Co. as they are satisfied to work under the same regulations and this would save time involved in undergoing another hearing .... Selectman Mansfield was in doubt as to the proper procedure, preferring to consult with town counsel prior to giving a definite answer." The Selectmen subsequently held a hearing on Redimix's application, which Raskiewicz attended. Raskiewicz states that the intervenors did not object to Redimix's application and none of the objections raised with respect to his permit were voiced at the hearing. In September or October of 1980, Raskiewicz learned that the Board had granted Redimix's application in July 1980. The

---

**2.** Raskiewicz also points out that the attorney representing the Town of New Boston in the state court action, Stephen Spielman, was a member of the firm of Devine, Millimet, Stahl & Branch of Manchester, New Hampshire, and that another member of that firm, Joseph A. Millimet, was and is on the Board of Directors of Redimix and handles Redimix's legal work. Millimet's uncontradicted affidavit establishes, however, that the Devine firm did not represent the Town of New Boston generally; Spielman, a member of the Devine firm from 1974 through December 31, 1976, represented the town in two earth permit disputes, *Everett Tingley v. Town of New Boston* and *John Raskiewicz v. Strong;* and Spielman took the cases with him when he left to form his own firm and entered new appear-

ances as counsel in each of the cases on behalf of that firm, O'Neil, Backus, Spielman & Little. Millimet also avers that

> At no time did any officer or employee of Manchester Redimix Concrete, Inc. request me to seek to have Attorney Stephen Spielman or anyone else in behalf of the Town of New Boston deny an earth products removal permit to John Raskiewicz.
>
> . . . .
>
> [T]he only involvement of Devine, Millimet, Stahl & Branch in the purchase of the New Boston property in question from John Raskiewicz was with respect to reviewing purchase and sale documents, conducting a title search and handling a closing.

Redimix permit contained substantially the same terms and conditions imposed in the Raskiewicz permit.

In April 1983, Raskiewicz filed suit in the United States District Court for the District of New Hampshire, naming as defendants the Town of New Boston, the individuals who had served as Selectmen over the course of Raskiewicz's permit battle (Roland Sallada, Harold Strong, George Hawkins, Thomas Mansfield, Sr., and Oliver Andrews), Redimix and its President, Norman E. Bissonnette, and the 28 townspeople who had sought to intervene in the state court proceedings. Raskiewicz's amended complaint, filed in June 1983, stretched over 85 pages and contained 19 counts. Briefly stated, Raskiewicz alleged that some or all of the defendants (1) conspired to deprive him of his fourteenth amendment due process and equal protection rights in contravention of 42 U.S.C. §§ 1981, 1983 & 1985(3); (2) conspired to violate and violated the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 15; (3) conspired to violate and violated the RICO Act, 18 U.S.C. §§ 1961 *et seq.;* and (4) committed a myriad of state law violations, including malicious use of judicial process, negligent and intentional infliction of emotional distress, inverse condemnation, fraud, and interference with advantageous business relationships and opportunities. The gravamen of the complaint is that because of defendants' "personal bias and malice ... rooted in their desire to acquire for themselves or others the ownership of plaintiff's land for the purpose of obtaining economic profit from the use of the land," defendants conspired to deny Raskiewicz a permit and that, as a result of this conspiracy, Raskiewicz was unable to use the land in the most profitable manner and was forced to sell his property to Redimix for less than full value. Raskiewicz prayed for $90 million in dam-

ages, plus interest, costs and attorneys' fees.

In August and September, the defendants filed various motions to dismiss and for summary judgment, supported by affidavits, copies of minutes from Selectmen's meetings, and copies of the permits offered Raskiewicz and accompanying correspondence. Raskiewicz resisted these motions and filed memoranda and affidavits in support of his cause. During this period, disputes over discovery requests and timing also arose so that as of the date of the hearing, December 16, 1983, there had been in excess of 140 filings or docket markings in the action and 23 motions were pending before the court (eight motions to dismiss, four summary judgment motions, and 11 motions relating to other matters).

As Raskiewicz concedes, the district court "granted considerable latitude to all the parties in the scope of their arguments during the day-long hearing, including a detailed oral review of the factual background of the Raskiewicz permit process, as well as references to settlement discussions ...." The parties had previously submitted copies of the state court orders and a copy of the transcript of the state court proceedings.

On January 13, 1984, the district court granted defendants' motions for summary judgment as to all Raskiewicz's claims. It held, in pertinent part, that Raskiewicz failed to state a federal section 1983 claim and that Raskiewicz's antitrust claims failed for lack of an interstate nexus.[3] The court, having disposed of the federal law claims before trial, chose not to exercise jurisdiction over Raskiewicz's state law claims. Finally, the court found that "the frivolous unfounded and reckless actions of both plaintiff and his counsel" warranted an award of attorneys' fees and costs to defendants, to be paid by Raskiewicz and his counsel.

---

**3.** The court concluded that

> For the above reasons and where matters beyond and outside the pleadings have been submitted and considered by the court, the court finds it appropriate that summary judg-

> ment be granted each and every defendant. The court has found no cognizable federal issues which justify prolonging this action or allowing it to reach a jury.

On this appeal, Raskiewicz waives his civil RICO, Clayton Act, and 42 U.S.C. §§ 1981, 1985(3) claims against New Boston and the Selectmen. He also does not appeal from the dismissal of his federal causes of action against the townspeople. Thus, before this court are Raskiewicz's section 1983 and Sherman Act claims, as well as the pendent state law claims.

In determining whether summary judgment is appropriate, the court must review the record in the light most favorable to the non-moving party. *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). The court also must indulge all inferences favorable to the party opposing the motion. *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "These rules must be applied with recognition of the fact that it is the function of summary judgment, in the time hallowed phrase, 'to pierce formal allegations of facts in the pleadings ....' and to determine whether further exploration of the facts is necessary." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (citations omitted), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). After an extensive review of the record, we conclude that because "the facts upon which appellant relied to support his allegation[s] were not susceptible of the interpretation which he sought to give them, appellees met their burden of showing the absence of any genuine issue of material fact." *Manego v. Cape Cod Five Cents Savings Bank*, 692 F.2d 174 (1st Cir.1982) (footnote omitted).

We begin by noting that this court has repeatedly said that federal courts do not sit as a super zoning board or a zoning board of appeals. *See, e.g., Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524 (1st Cir.1983); *Cloutier v. Town of Epping*, 714 F.2d 1184 (1st Cir.1983); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). While the Supreme Court has yet to provide precise analysis concerning claims of this sort, we feel confident that where, as here, the state offers a panoply of administrative and judicial remedies, litigants may not ordinarily obtain federal court review of local zoning and planning disputes by means of 42 U.S.C. § 1983.

Raskiewicz argues that "[b]ecause of the presence of bias, the present case is not governed by the general rule prohibiting ordinary land use disputes from being litigated under § 1983." Charges of bias, bad faith, and other "opprobrious epithets of malice," however, are commonplace in cases of this nature. *Creative Environments*, 680 F.2d at 830. *See, e.g., Chiplin*, 712 F.2d at 1527–28; *Cloutier*, 714 F.2d at 1189.[4] If all that were required to secure federal jurisdiction were loose claims of conspiracy and corruption, virtually any case of this type could be brought into federal court. Here, even assuming— which is unclear—that Raskiewicz, in alleging bias and conspiracy, is implicitly alleging actual corruption[5] on the part of the Board and Redimix, and that sufficiently serious, supported, assertions of this type

**4.** *Every* appeal by a disappointed developer from an adverse ruling by a local Massachusetts planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. *Creative Environments*, 680 F.2d at 833.

**5.** The source of the Board's alleged bias is left unclear. In his complaint, Raskiewicz alleges that personal biases motivated the Board to deny his permit. On appeal, he suggests that the Board denied him a permit because he was not as politically influential as Redimix (although Redimix, like Raskiewicz, is a nonresi-

dent of New Boston), because the Board and Redimix made an agreement to deny Raskiewicz a permit (*but see infra*, pages 45–46) or because the Board sought to "accommodat[e] ... a constituent's unlawful demands to foreclose the Plaintiff's ability to sell gravel to interstate buyers." Without suggesting where the line is to be drawn, the members of local boards have considerable leeway for the free exercise of their personal views before any possible due process claim might exist, assuming without deciding that such a claim would ever be maintainable in this context. Raskiewicz has provided no basis for inferring that that line has been approached, let alone crossed.

could make out a due process claim under section 1983 (a matter we do not now decide), the record falls far short of creating a genuine issue of material fact with respect to such a claim.

Raskiewicz argues that the Board's allegedly uncooperative conduct during the course of the permit application process and the state court proceedings, Selectman Sallada's statement that "John Raskiewicz would never be given a gravel permit," and the Board's prompt grant of a permit to Redimix, a potential competitor of Raskiewicz's, all support an inference that the Board was biased against him. Raskiewicz also contends that Bissonnette's statement that Redimix would have no difficulty obtaining a permit supports his allegation of conspiracy. At argument, Raskiewicz's counsel asserted that the Sallada and Bissonnette statements were particularly probative of bias and conspiracy.

We see nothing that supports an inference of actual bias, let alone corruption. The Board's conduct in the application proceedings and state court action was not probative of illegal bias. Indeed, there is no indication that the Board's treatment of Raskiewicz's case was any different from the treatment accorded other applicants. Further, any negative inference to be drawn from the purportedly "key" statement by Sallada that Raskiewicz would never be given a permit is completely negated by the fact that the Board did in fact twice offer Raskiewicz a permit although it

was not required by the ordinance to do so.[6]

▮ Raskiewicz's inference of conspiracy, a necessary ingredient, also, of his antitrust claim, is even less compelling. We are required to respect all inferences that reasonably can be drawn from the facts, but we cannot ignore uncontested facts that render inferences unreasonable or, in this case, fantastic. It is uncontested that Redimix had no involvement with the town or Raskiewicz before Raskiewicz's agent contacted the company in the summer or fall of 1979. At that point in time, Raskiewicz had twice been offered a permit after extensive negotiations, had chosen not to accept them, and, by his own admission, had given up his quest for a permit. The timing of Redimix's entry on the scene alone punctures the inference that the Board and Redimix conspired to deprive Raskiewicz of a permit during the years he sought one (1974–1979). Moreover, the fact that Redimix tried to accept the very permit offered Raskiewicz and eventually received a permit containing terms and conditions similar to those imposed on Raskiewicz dispels any inferences of conspiracy or bias to be drawn from Bissonnette's confidence that he could secure a permit and the Board's prompt grant of a permit to Redimix.[7] We therefore find no material issue as to either the section 1983 or Sherman Act claims.

▮ We have discussed this case in greater detail than it deserves to illustrate that the district court's conclusion that

6. Raskiewicz does not argue that the permit offered him was a sham because its substantive terms and conditions were unduly onerous or contrary to local practice. We find no impropriety in the one condition that Raskiewicz contends made the permit unacceptable, the requirement that he drop his state court suit, because as the district court noted, "[e]ven the shabbiest of lawyering practice requires that in settling a suit you bargain to have any pending actions dropped."

7. Raskiewicz argues that the court should have permitted him to conduct additional discovery before granting summary judgment. He also asserts that because state of mind is an element of his claim, the court should have applied a more lenient standard. In view of the length of

time that this dispute was brewing, however (the challenged events occurred before 1980, and the state court proceedings had been brought in 1974), as well as its patent facial insubstantiality as a federal court matter, we see no abuse in the court's denial of further discovery. *See Hahn,* 523 F.2d at 467 ("Promises that evidence would be forthcoming were not enough."). Moreover, application of a different standard would not have altered the result; "[w]hile we believe that the plaintiff is entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsey, speculation and conjecture." *Hahn,* 523 F.2d at 467 (quoting *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir.1962)).

**46**

Raskiewicz's federal claims were "totally frivolous and unwarranted" was completely justified. We therefore affirm the court's award of attorneys' fees and costs to the defendants.

■ We have held that "smoke alone is not enough to force the defendants to trial to prove that their actions were not" improper. *Manego*, 692 F.2d at 177; *Packish v. McMurtrie*, 697 F.2d 23, 27 (1st Cir. 1983). Here, we do not even see the smoke. *Packish*, 697 F.2d at 27. In view of the frivolous nature of this appeal, we order that Raskiewicz be taxed with double costs.

Affirmed.