SMITHFIELD CONCERNED CITIZENS FOR FAIR ZONING; Jackson Despres, Alfred Constantino, individually and as principals of Smithfield Concerned Citizens for Fair Zoning; Joan Johnson; Johnson Insulation Co., Inc.; Rollingwood Acres, Inc.; Nicholas Cambio d/b/a Universal Properties Group; Durastone, Inc.; Angelo Calcagni; Calcagni Construction Corp.; Larry Colaluca; Chester's Service Station, Inc.; Frank Sleboda; Colony Ice Cream Co.; Michael and Ralph DiDomenico; William Steere; William Steere, Jr.; Steere's Inc.; Thomas Farrell; Scott Wilcox; Cavanagh Company; R.S.R. II; Colonial Land Development; 844 Group; R & S Realty; John Does, Nos. 1 through _____ as property owners located in the Town of Smithfield; John Does, Nos. 1 through _____ as all those who have been injured as a result of the Acts complained of herein, Plaintiffs,

v.

The TOWN OF SMITHFIELD, by and through its Treasurer Lillian RAINVILLE; the Town Council of the Town of Smithfield; John F. Emin, Jr., Gloria Nerney, F. Monroe Allen, individually and as Members of the Town Council of the Town of Smithfield, Defendants.

Civ. A. No. 87–0246–T.

United States District Court, D. Rhode Island.

July 21, 1989.

Michael A. Kelly, Providence, R.I., for plaintiffs.

C. Russell Bengston, Harry Asquith, Edward Moses, Edmund Alves, Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This matter is before the Court on the plaintiffs' objection to that portion of a Magistrate's Report and Recommendation recommending dismissal of the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND

On April 14, 1987, the Town Council of the Town of Smithfield (the "Council") adopted a new zoning ordinance (the "Ordinance"). Among other things, the Ordinance provides for a wide variety of residential, commercial, industrial and public uses; prescribes the geographical districts in which each of the uses is permitted; establishes performance standards addressing a number of environmental concerns; and creates a zoning board of review which is empowered to interpret the Ordinance and grant variances and exceptions from its terms.

Eighteen of the twenty-five plaintiffs are individuals or entities that own property and/or operate businesses in Smithfield. Four plaintiffs are identified only as individual who live outside of Smithfield or persons who claim to have been damaged in some unspecified way. The remaining plaintiffs are Smithfield Concerned Citizens for Fair Zoning, which is described, simply, as a nonprofit organization located in Smithfield, and two of its principals.

The plaintiffs allege that the Ordinance has substantially altered the municipality's zoning designations in ways that adversely impact them. Most complain that it changed the designation of their property from commercial or industrial to residential. The plaintiffs have brought this action against the Town, the Council, and its individual members seeking a declaration that the Ordinance is invalid; injunctive relief against its enforcement and/or implementation; and $50 million in damages.

The defendants have counterclaimed contending that the plaintiffs' suit is frivolous and that their excessive claim for damages has impaired the town's bond rating. However, the defendants did not object to that portion of the Magistrate's report recommending dismissal of the counterclaim for lack of jurisdiction presumably because the Magistrate also recommended dismissal of the complaint.

## DISCUSSION

### I. *Standard of Review*

An objection to a Magistrate's recommendation with respect to a Rule 12(b)(6) motion to dismiss requires a *de novo* determination by the Court. 28 U.S.C. § 636(b)(1). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the [opposing party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making that determination the complaint should be construed in the light most favorable to the party against whom the motion is directed. *E.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Every doubt must be resolved in the opponent's favor, and all well-pleaded allegations of the complaint must be accepted as true. *E.g., Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

### II. *The Claims*

In their complaint, the plaintiffs present a smorgasbord of claims under the Constitution and statutes of both the United States and the State of Rhode Island. Some of the claims are difficult to decipher because they are vague and overlapping. However, it is clear that they are predicated on the Civil Rights Act, 42 U.S.C. § 1983; the "takings" clause of the fifth amendment; the "due process" clause of the fourteenth amendment; the "conspiracy" section of the Civil Rights Act, 42 U.S.C. § 1985(3); the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 *et seq.;* and a variety of state constitutional and statutory provisions. These claims will be considered *seriatim.*

### A. Section 1983 Claims

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The rights that the plaintiffs say they have been deprived of are their property and due process rights as set forth in the fifth and fourteenth amendments.

### 1. *The Fifth Amendment Claim*

▮ The fifth amendment provides that private property shall not "be taken for public use, without just compensation." The plaintiffs claim that the rezoning of their land constitutes such a taking because it has deprived them of "all economically viable use" of the property and diminished its value.

#### (a) Ripeness—the "taking" and "just compensation" requirements

In order to establish a fifth amendment violation, a property owner must demonstrate both that his property was "taken" and that no provision was made for awarding him just compensation. Land use regu-

lation constitutes a "taking" if it deprives the owner of economically viable use of his land or does not substantially advance a legitimate state interest. *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). Whether a regulation has such an effect involves an essentially *ad hoc,* factual inquiry to determine "[t]he economic impact of the regulation on the claimant" and "the extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). However, that assessment cannot be made until a final decision has been made regarding the regulation's applicability to the property in question. Thus, when the regulation takes the form of a zoning ordinance, a takings claim is not ripe for adjudication until the administrative procedures for making that determination have been exhausted. *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985).

In *Williamson,* a developer alleged that enactment of a zoning ordinance amounted to a "taking" of its property. A jury found for the developer and awarded damages. The Supreme Court set aside the award, in part, on the ground that judicial review was premature inasmuch as the developer had not sought a variance from the Planning Commission. In its opinion, the Court stated:

> Respondent has not yet obtained a final decision regarding how it will be allowed to develop its property. Our reluctance to examine taking claims until such a final decision has been made is compelled by the very nature of the inquiry required by the Just Compensation Clause. Although "[t]he question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty," this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations. Those factors sim-

ply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

473 U.S. at 190–191, 105 S.Ct. at 3118–19 (citations omitted).

The *Williamson* court also addressed the "just compensation" requirement saying:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "'reasonable, certain and adequate provision for obtaining compensation'" exist at the time of the taking.

473 U.S. at 194, 105 S.Ct. at 3120 (citations omitted). The Court concluded that the developer's failure to resort to available state law procedures for seeking compensation constituted another reason for denominating his claim as premature.

In the instant case, the Ordinance and applicable state law provide both a mechanism by which application of the Ordinance to the plaintiffs' land may be administratively determined and a procedure for obtaining just compensation for "constructive takings" or "inverse condemnations." Sections 8.4.1.a. and 8.4.4.c. of the Ordinance and General Laws of Rhode Island (1956) (1988 Reenactment) §§ 45–24–13 and 45–24–19 provide for a zoning board of review which is specifically empowered to grant variances where literal enforcement of the zoning regulations would result in unnecessary hardship. Indeed, the Rhode Island Supreme Court has consistently stated that a variance *must* be granted when a failure to do so would deprive an owner of all beneficial use of his property. *E.g., Denton v. Zoning Bd. of Review,* 86 R.I. 219, 133 A.2d 718 (1957). In addition, Rhode Island law permits a landowner to obtain relief from the dimensional requirements of a zoning ordinance when literal enforcement would preclude full enjoyment of a permitted use. *E.g., Westminster Corp. v.*

*Zoning Bd. of Review*, 103 R.I. 381, 238 A.2d 353 (1968).[1]

By the same token, Rhode Island law specifically recognizes a landowner's right to obtain just compensation when government regulation unconstitutionally deprives him of an interest in his property. That principle was succinctly stated in *E & J, Inc. v. Redevelopment Agency*, 122 R.I. 288, 405 A.2d 1187 (1979), where the Rhode Island Supreme Court said:

> Governmental action short of actual acquisition of property may be a constructive taking or an inverse condemnation within the meaning of the Fifth and Fourteenth Amendments if such action deprives the property owner of all or most of his interest in the subject matter.

*Id.* 405 A.2d at 1189 (footnote omitted). *See also Landfill & Resource Recovery, Inc. v. Department of Envtl. Management*, 512 A.2d 866 (R.I.1986); *O.C. Constr. Co. v. Verrengia*, 700 F.Supp. 86 (D.R.I.1988).

In this case, the plaintiffs do not allege that they have sought either relief from the zoning board or compensation for the alleged taking. In fact, they acknowledge that they have done neither. Accordingly, there is not, yet, a final decision regarding how they will be permitted to develop their property. Nor can it be said that they have been denied just compensation for any taking that may have occurred.

#### (b) Waiver and/or futility

The plaintiffs argue that they should not be required to seek relief from the zoning board for two reasons. First, they contend that, under Rhode Island Law, such a request would be deemed a waiver of their right to later challenge the Ordinance's constitutionality in the event their request is denied. Second, they assert that it would be futile to seek such relief because, during the course of two public hearings on the Ordinance, they were unable to persuade the Council to revise it; and, because

the Ordinance prohibits the zoning board from granting special exceptions in a residential zone.

The Court finds these arguments unpersuasive on several grounds. First, they address only the "taking" component of the ripeness issue and ignore the "just compensation" component. Thus, even if the plaintiffs were exempted from the requirement of seeking relief from the zoning board, their fifth amendment claim would still be premature because they have not yet availed themselves of established state procedures for obtaining just compensation for any "taking" that may have occurred.

Furthermore, the concern the plaintiffs express about a possible waiver of their rights appears to be based on an erroneous view of both state law and its effect on federal constitutional rights. In raising the specter of a waiver, they rely on dictum in *Sweck v. Zoning Bd. of Review*, 77 R.I. 8, 72 A.2d 679 (1950), where the court said:

> This court has heretofore held in a number of cases that by asking the zoning board to exercise its discretion under an application for an exception or variance the applicant precludes himself from raising any question as to the constitutionality of the enabling act or the validity of a zoning ordinance enacted thereunder, because by filing such an application he necessarily admits the constitutionality or validity of the laws upon which he relies.

77 R.I. at 10–11, 72 A.2d at 680.

However, the actual holding in *Sweck* was merely that a landowner who petitioned the zoning board for a variance without challenging the validity of the ordinance could not raise such a challenge, *for the first time*, on appeal. Thus, the Court stated:

> Petitioners' fundamental argument before us is that the zoning ordinance was

---

1. State law also permits uses that pre-date enactment of a zoning ordinance to be continued, but not expanded, even though the ordinance proscribes them. R.I.Gen.Laws § 45–24–10 (1988); *Town of Coventry v. Glickman*, 429 A.2d 440 (R.I.1981). The extent to which such "grandfa-

ther" rights may obviate or diminish the impact of the Smithfield Ordinance on the plaintiffs' property is not clear because the complaint does not explicitly state the extent to which the plaintiffs have established such uses.

invalid because of alleged deficient notice and advertisement before its adoption. This point cannot be raised in *these* proceedings. Before the [zoning] board petitioners made no claim of their right to construct the house as a two-family dwelling. They invoked *only* the exercise of the board's discretion under the ordinance to grant them relief from the requirements thereof.

77 R.I. at 10, 72 A.2d at 680 (emphasis added).

Indeed, one of the very cases cited by *Sweck,* as well as cases decided subsequently, specifically recognize that a landowner who has unsuccessfully sought a variance may challenge the constitutionality or applicability of the ordinance in another proceeding. *See, e.g., Nardi v. City of Providence,* 89 R.I. 437, 153 A.2d 136 (1959); *Winters v. Zoning Bd.,* 80 R.I. 275, 96 A.2d 337 (1953); *Heffernan v. Zoning Bd. of Review,* 49 R.I. 283, 142 A. 479 (1928), *later app.,* 50 R.I. 26, 144 A. 674 (1929). In short, Rhode Island law does not appear to bar one who unsuccessfully seeks a variance from challenging the constitutionality of the ordinance in a subsequent proceeding. It merely prohibits such a challenge from being made, for the first time, on appeal; or, in the same proceeding in which the petitioner has obtained relief under the very ordinance he challenges.

Even if the plaintiffs' interpretation of Rhode Island law is correct, it would not foreclose any right they have under the United States Constitution to challenge the Ordinance in a federal court. A state court has no power to bind a federal court with respect to questions of federal law, in general, or rights guaranteed by the United States Constitution, in particular. *E.g., Rural Water Dist. #3 v. Owasso Util. Auth.,* 530 F.Supp. 818, 823 (N.D.Okla. 1979). ("The Federal Courts are not bound by State Court decisions as to the effect of the Federal Constitution or the effect of Federal Statutes."); *Thomson–CSF Components Corp., v. Hathaway Instruments, Inc.,* 85 F.R.D. 344, 348 (D.N.J.1980) ("a state court ruling on a federal question is not binding in a federal court").

The argument that it would be futile to seek relief from the zoning board is, similarly, lacking in merit and suggests a fundamental misunderstanding of zoning law. The contention that because the *Council* was not receptive to the plaintiffs' arguments regarding *enactment* of the Ordinance, it would be futile to petition the *zoning board of review* for a *variance* is a *non sequitur.* The Council and the zoning board are two separate and distinct bodies created pursuant to different statutes and charged with different responsibilities. *Compare* R.I. Gen. Laws §§ 45–24–1 to 45–24–6 *with* §§ 45–24–13 to 45–24–19 (1988). Consequently, the fact that the plaintiffs were unable to persuade the Council not to adopt the Ordinance is, patently, not probative of whether the zoning board has a "closed mind" with respect to variances. In fact, no such allegation is even made in the complaint. By the same token, the contention that because the Ordinance prohibits *special exceptions* in residential zones, it would be pointless to seek *variances* ignores the fundamental distinction between the two and is akin to comparing apples and oranges. *E.g., Kraemer v. Zoning Bd. of Review,* 98 R.I. 328, 201 A.2d 643 (1964).

In short, there is no basis for exempting plaintiffs from the requirement that they first seek a final determination regarding the Ordinance's applicability to their property from the body created for that purpose. Their failure to do so and their failure to seek just compensation pursuant to established state law procedures renders their fifth amendment claims premature, at best. Therefore, those claims should be dismissed.

### 2. *Substantive Due Process*

The Due Process Clause of the fourteenth amendment prohibits states (and their municipal subdivisions) from depriving any person of "property, without due process of law." "Due process" takes two forms: substantive due process and procedural due process. Substantive due process prevents legislative bodies from enacting statutes that arbitrarily or unreason-

ably infringe on constitutionally recognized life, liberty or property interests.

■ Zoning ordinances, like other forms of social and economic regulation that do not implicate "fundamental rights," satisfy the requirements of substantive due process if they are rationally related to a legitimate state interest. Consequently, they should be upheld unless "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *Roberts v. City of Woonsocket*, 575 F.2d 339, 341 (1st Cir. 1978).

In making that determination, it is not the Court's function to act as a "super zoning board" substituting its judgment for that of a democratically elected body on debatable issues of land use policy. *See, e.g., Raskiewicz v. Town of New Boston*, 754 F.2d 38, 44 (1st Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). Rather, the Court's role is confined to determining whether the local legislature legitimately could have concluded that its articulated objective served the best interests of the community and whether the regulations adopted were a reasonable means of achieving that goal. Thus, the relevant inquiry is not whether the claimant or the Court agrees with the legislative body's judgment; but, rather, whether the rationality of that judgment is "at least debatable." If it is, the requirements of substantive due process are satisfied. *Shelton v. City of College Station*, 780 F.2d 475, 483 (5th Cir.) (*en banc*), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986); *see also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 723–24, 66 L.Ed.2d 659 (1981).

A corollary to this rather deferential standard is that such regulations are presumed to be constitutional and a party challenging them on substantive due process grounds bears a heavy burden of proving

that the legislative body adopting them acted in an arbitrary and irrational way. *See, e.g., Hodel v. Indiana*, 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981); *Tenoco Oil Co. v. Department of Consumer Affairs*, 876 F.2d 1013, 1022 n. 15 (1st Cir.1989).

In this case, the plaintiffs present a hodgepodge of overlapping arguments in support of their claim that the Ordinance violates their substantive due process rights. Those arguments may be grouped into three categories that will be considered, in turn.

(a) The Police Power Argument

■ The plaintiffs contend that the Ordinance represents an unlawful exercise of the police power because it is tantamount to "an illegal building moratorium" that "effectively prohibits all building in the Town of Smithfield," has resulted in a loss of "all economically viable use of their land" and "constitutes a taking" of their property. Complaint at paras. 76, 77 and 79. This contention, essentially, mirrors the plaintiffs' fifth amendment claim and suffers from the same infirmity. Thus, in *Williamson, supra,* the Supreme Court held that a similar claim was premature, saying:

Viewing a regulation that "goes too far" as an invalid exercise of the police power, rather than as a "taking" for which just compensation must be paid, does not resolve the difficult problem of how to define "too far," that is, how to distinguish the point at which regulation becomes so onerous that it has the same effect as an appropriation of the property through eminent domain or physical possession. As we have noted, resolution of that question depends, in significant part, upon an analysis of the effect of the ... application of the zoning ordinance ... on the value of respondent's property and investment-backed profit expectations. That effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property.

473 U.S. at 199–200, 105 S.Ct. at 3123. (footnote omitted).

As in *Williamson*, the plaintiffs' "police power" claim cannot be deemed ripe until they have sought a final decision from the zoning board. Until that time, there is no basis for determining whether or to what extent they have been deprived of their property.

### (b) The Legitimate State Interest Argument

■ The plaintiffs also attack the purpose of the Ordinance alleging that its "goals and ends ... are not legitimate goals and do not serve a legitimate governmental purpose." Complaint at para. 64. They assert that the "express and implied intent" of the Ordinance is to "exclude multifamily residences, industry and commercial establishments and low or moderate income housing" and "to prohibit growth and reduce the population of Smithfield." Complaint at paras. 61 and 62.

These assertions are flatly contradicted by the terms of the Ordinance itself. The Preamble to the Ordinance recites its purposes as being:

> to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to provide adequate light and air, to prevent the overcrowding of land; to avoid undue concentration of population; and to facilitate the adequate provisions of transportation, water, sewerage, schools, parks and other public requirements.... and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the Town.

Moreover, as previously noted, the Ordinance expressly provides for zones in which a wide variety of industrial, commercial and multifamily residential uses are permitted.

There can be no question but that the aforesaid objectives are well within the scope of a municipality's power to regulate land use or that the Council reasonably could have concluded that such goals serve the best interests of the community. Courts have recognized efforts to "enhance the quality of life," *Penn Central*, 438 U.S. at 129, 98 S.Ct. at 2661, and, even, to protect residents from "the ill effects of

urbanization," *Agins*, 447 U.S. at 261, 100 S.Ct. at 2142, as permissible goals of zoning. Indeed, controlling both the rate and character of community growth is the very purpose of land use regulation. *Pace Resources, Inc. v. Shrewsbury Township*, 808 F.2d 1023, 1030 (3d Cir.) (dismissal of substantive due process claim in zoning dispute for failure to state a claim), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987). Consequently, local governments consistently have been accorded considerable latitude in making such judgments.

Of course, the mere recitation of permissible objectives does not necessarily insulate a zoning ordinance from attack on substantive due process grounds. However, where such objectives are clearly articulated, the Court's inquiry into the *purpose* of the regulation is ended and all that remains for determination is whether the means chosen are rationally designed to achieve that purpose. *See, e.g., Shelton*, 780 F.2d at 479–83.

### (c) The Arbitrary and Capricious Argument

■ The plaintiffs argue that the Ordinance is arbitrary and capricious (i.e. irrational). In this connection, they allege, "upon information and belief," that the Council failed to perform studies to support its decision and failed to prepare an analysis of the Ordinance's economic, social and physical impact. Complaint at para. 51.

The short answer to that contention is that substantive due process does not require a legislative body to perform any particular studies or prepare any particular analyses to justify the decisions it was duly elected to make. *See, e.g., Vance v. Bradley*, 440 U.S. 93, 109–12, 99 S.Ct. 939, 948–50, 59 L.Ed.2d 171 (1979); *Brotherhood of Locomotive Firemen and Enginemen v. Chicago, Rock Island & Pacific R.R.*, 393 U.S. 129, 138–39, 89 S.Ct. 323, 327–28, 21 L.Ed.2d 289 (1968); *Lydo Enterprises v. City of Las Vegas*, 745 F.2d 1211, 1215 (9th Cir.1984). As previously stated, all that due process requires with respect to land use and other forms of social and economic regulation is that a legitimate state pur-

pose be discernible and that the means chosen to accomplish that purpose be arguably rational. A legislative body need not convince the Court that its policy decisions are wise ones, or that they are supported by empirical data. To hold otherwise would eviscerate the rational basis test itself. That test requires only that legislative enactments be within the bounds of permissible legislative discretion. It does not mandate that they be exhaustively documented. Here, the Court has little difficulty in concluding that this standard has been satisfied.

3. *The Procedural Due Process Claim*

The procedural due process guarantees of the fourteenth amendment prohibit governmental action that deprives a person of his or her property unless the decision to take such action was arrived at in a fair manner. In this case, the plaintiffs make two categories of allegations that they say establish violations of procedural due process. The first category consists of alleged violations of state law provisions requiring notice to nearby property owners before a zoning ordinance may be enacted and requiring that all meetings of a public body at which matters within its jurisdiction are discussed be open to the public. Complaint at paras. 110, 111 and 114. The second category consists of allegations that the zoning Ordinance and maps, as adopted, were vague and inaccurate and do not provide property owners with proper notice as to how their land will be rezoned. Complaint at paras. 71 and 72.

(a) State Law Violations

 The allegations that, in enacting the Ordinance, the Council did not comply with the notice and/or open meetings requirements of R.I.Gen.Laws §§ 42–46–1 and 45–24–4 (1988) do not require protracted discussion. Even if these allegations are true, they do not establish violations of procedural due process. The specific mandates of procedural due process vary according to the nature of the governmental action in question. Thus, while notice and an opportunity to be heard are required in judicial or quasi-judicial proceedings where the rights of specific individuals are being de-termined, they are not required in legislative proceedings that deal with determinations which apply generally to broad classes of persons. In the case of legislative action, it is impractical to give every individual who may be affected a direct voice in the decision-making process. Rather, the rights of affected individuals are protected by the power they exercise over the officials they have elected to make such decisions. *Bi–Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).

Certainly, states are free to require more than what is mandated by the fourteenth amendment. However, state statutes that do require more cannot expand the reach of procedural due process any more than state statutes that require less can shrink it. Otherwise, the parameters of procedural due process would vary from state to state and violations of state law would be magically transformed into federal constitutional questions. While state law must be resorted to in determining whether one has been deprived of a property right, it plays no role in assessing whether the procedure employed passes constitutional muster.

Here, there can be no question but that the Smithfield Ordinance, like any other zoning ordinance, was a legislative act. Consequently, procedural due process did not require that the plaintiffs receive notice or an opportunity to be heard. *Bi–Metallic, supra; Rogin v. Bensalem Township*, 616 F.2d 680, 692–94 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981). By the same token, the defendants' alleged failure to comply with the Rhode Island open meetings statute does not constitute a violation of due process. *Creative Environments*, 680 F.2d at 830; *Roy v. City of Augusta, Maine*, 712 F.2d 1517, 1522–23 (1st Cir.1983). In these respects, the instant case is no different from a series of others in which similar attempts to convert alleged violations of state land use laws into federal constitutional claims by simply labelling them as such have been rejected. *E.g., Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524, 1527 (1st Cir.1983); *Creative*

*Environments,* 680 F.2d at 833. Briefly stated, the plaintiffs' allegations may set forth a state law claim but they do not articulate a violation of procedural due process.

### (b) Vagueness

■ The assertions that the Ordinance and accompanying maps are "vague, unclear, incomprehensible and cannot be understood by a great majority of those who are affected by the same" and that they "do not provide the property owners in Smithfield with proper notice as to how their land will be rezoned," (complaint at paras. 71 and 72), likewise fail to set forth a procedural due process claim. First, the plaintiffs' allegations are, themselves, vague, unclear and incomprehensible. They provide no clue as to what portions of the Ordinance and/or maps are alleged to be unclear or what is unclear about them. Consequently, they amount to little more than bald assertions and conclusory statements which are insufficient to pass even the minimal requirements applicable to a motion to dismiss. *E.g., Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983); *Kadar Corp. v. Milbury,* 549 F.2d 230, 233 (1st Cir.1977).

Second, the plaintiffs do not allege that *they* do not understand the Ordinance or that *they* are unable to determine how their property has been rezoned. On the contrary, the complaint contains very specific allegations regarding how the property of most of the plaintiffs has been rezoned. Indeed, it is difficult to see how the plaintiffs can assert that their property has been taken or how they can have standing to maintain this action without knowing whether and how the Ordinance affects their land. The possibility that the Ordinance or attendant maps may be unclear to others does not constitute a violation of these plaintiffs' due process rights.

Finally, if the plaintiffs are genuinely unable to determine how the Ordinance may apply to their property, they may seek clarification through any of a variety of means ranging from consultation with or application to the zoning official who is charged with administering the Ordinance, *see* Ordinance § 8.1, to petitioning the Town Council for a corrective amendment, *see* Ordinance § 8.7, to seeking a declaratory judgment in the state courts. The plaintiffs fail to allege that they have done any of those things. In the absence of such an attempt and, given the panoply of administrative and judicial remedies available under state law, the Court can find no violation of procedural due process. *Chongris v. Board of Appeals,* 811 F.2d 36, 40 (1st Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987); *Raskiewicz,* 754 F.2d at 44; *Creative Environments,* 680 F.2d at 832 n. 9.

### B. 42 U.S.C. § 1985(3)

■ Next in the plaintiffs' compendium of claims is one brought pursuant to the conspiracy section of the Civil Rights Act which is set forth in 42 U.S.C. § 1985(3). That section makes it illegal for two or more persons to conspire to deprive any person or class of persons of equal protection of the laws or of equal privileges and immunities under the laws. The plaintiffs predicate their conspiracy claims on allegations made "upon information and belief" that three members of the Council unlawfully conspired "through covert meetings, ... deceit, artifice and misinformation" to "manipulate[ ] and orchestrate[ ]" passage of the Ordinance knowing and intending that it would "violate the due process rights of the Plaintiffs." Complaint at paras. 87–90.

Those allegations are deficient in, at least, two respects. First, they amount to nothing more than vague and unsubstantiated conjecture of a type that the First Circuit has repeatedly said is insufficient to support such claims. Thus in *Raskiewicz, supra,* the court stated: "If all that were required to secure federal jurisdiction were loose claims of conspiracy and corruption, virtually any case of this type could be brought into the federal court." 754 F.2d at 44.

Second, one of the elements required to make out a claim under § 1985(3) is that

the alleged conspiracy was motivated by some racial, or invidiously discriminatory animus toward the plaintiffs. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971); *Creative Environments,* 680 F.2d at 834. Here, no such motive is alleged. Nor does the complaint even identify any of the plaintiffs as members of a class protected by the provisions of § 1985(3). Therefore, the complaint fails to state a claim under 42 U.S.C. § 1985(3).

### C. 42 U.S.C. §§ 3601 et seq. (The Fair Housing Act of 1968)

■ The plaintiffs' Fair Housing Act claim is similarly flawed. That statute prohibits sellers or lessors of housing from discriminating on the basis of race, color, religion, handicap, familial status, sex or national origin. It has been interpreted to bar the enactment of a zoning ordinance the effect of which is to deprive racial minorities of housing opportunities. *United States v. City of Black Jack, Missouri,* 508 F.2d 1179 (8th Cir.1974), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975).

The plaintiffs allege that the Smithfield Ordinance violates the statute because it discriminates against "real estate developers ..., [the] economically disadvantaged and minorities," in that it has the effect of barring such groups from residing in Smithfield. Complaint at paras. 82 and 83. However, the plaintiffs make no allegations that would confer standing upon them to assert such a claim. They have not asserted that the Ordinance excludes any of them from Smithfield because of their race, color, religion, handicap, familial status, sex or national origin. In fact, most of the plaintiffs are identified in the complaint as owners of property located in the Town and none of them are identified as members of any of the classes protected by the Act. Nor have the plaintiffs alleged any other facts that suggest they have a personal stake that entitles them to invoke the statute. *Warth v. Seldin,* 422 U.S. 490, 498–499, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975); *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1981).

Since the individual plaintiffs have not demonstrated standing to assert a claim under the Fair Housing Act, the organization to which they presumably belong also lacks standing to sue on their behalf. In order to establish associational standing, Concerned Citizens must demonstrate that: "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purposes; and (3) neither the claim asserted nor the relief requested require the participation of individual members in the law suit." *Camel Hair and Cashmere Institute of Am., Inc. v. Associated Dry Goods Co.,* 799 F.2d 6, 10 (1st Cir.1986) (citing *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)). The failure to satisfy even the first requirement is fatal to Concerned Citizens' claim.

### D. Pendent Jurisdiction

In addition to their federal claims, the plaintiffs (and the defendants) make a number of claims under state law. When a substantial federal claim has been asserted, it is appropriate for a federal court to exercise pendent jurisdiction over state claims which derive from a "common nucleus of operative fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, in this case, no valid federal claims have been asserted. Consequently, there is no basis for exercising pendent jurisdiction over the parties' remaining state law claims, and they, too, should be dismissed.

### CONCLUSION

For the reasons previously stated, the Magistrate's Report and Recommendation is accepted, in its entirety, and both the complaint and counterclaim are hereby dismissed. In addition, it is hereby ordered

that any party seeking an award of attorneys' fees shall file a motion for such an award together with supporting memoranda and affidavits within 30 days. Failure to do so shall be deemed a waiver of any such claim.

IT IS SO ORDERED.