**Elling O. EIDE, Plaintiff–Appellee,**

v.

**SARASOTA COUNTY, a political subdivision of the State of Florida, Defendant–Appellant.**

No. 88–3700.

United States Court of Appeals, Eleventh Circuit.

Aug. 8, 1990.

Richard E. Nelson, Nelson, Hesse, Cyril, Smith, Widman & Herb and James D. Keeney, Sarasota, Fla., for defendant-appellant.

Donald E. Hemke, Carlton Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, Fla., for plaintiff-appellee.

Before ANDERSON and COX, Circuit Judges, and SHOOB *, District Judge.

## ON PETITION FOR REHEARING

(Opinion March 8, 1990, 11th Cir., 895 F.2d 1326).

ANDERSON, Circuit Judge:

This case is before the panel on petition for rehearing. The previous opinion in this case, published at 895 F.2d 1326 (11th Cir. 1990), is withdrawn, and the following opinion is substituted in lieu thereof. The petition for rehearing is denied.

The issue in this case is whether a landowner's contentions that Sarasota County violated his equal protection and due process rights are ripe for decision.[1] We find that the plaintiff's claims are not ripe.

### I.   FACTUAL BACKGROUND

Florida's land use planning statutes provide for the adoption of comprehensive plans "to control and direct the use and development of property within a county or municipality." *Machado v. Musgrove*, 519 So.2d 629, 631–32 (Fla. 3d DCA 1987) (citations omitted), *adopted en banc*, 519 So.2d

---

* Honorable Marvin H. Shoob, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1.   Sarasota County has raised a number of other grounds on appeal. However, because we dispose of this case on ripeness grounds, we need not consider the County's other arguments.

629 (Fla. 3d DCA), *review denied,* 529 So.2d 693, 694 (Fla.1988). Once a comprehensive plan for an area is adopted, all development approved by a governmental agency must be consistent with the plan. Fla.Stat. § 163.3194 (Supp.1989).

On June 30, 1981, Sarasota County (the "County") adopted a statutorily mandated comprehensive plan ("Apoxsee") to map out the future development of land in the County. This comprehensive plan identified various areas as "village activity centers," "community centers," and "town centers." Village activity centers are permitted to have approximately 75 acres of commercially zoned land while community centers may have 125 acres in commercial use.[2] Town centers are permitted to have variable commercial acreage with no upper limit on the amount of commercially zoned land. Centers where less than 50% of the acreage is commercial are authorized to adopt sector plans "to determine future commercial land-use allocations to support future population growth in the area." R9–110. In order for property included in a sector plan to be rezoned, the proposed rezoning and development plans have to be consistent with both Apoxsee and the sector plan. Mere adoption of a sector plan does *not* change the zoning of any of the properties involved.

Elling Eide, the appellee, owns two parcels of land—one of approximately fourteen acres (the "14–acre parcel") and the other of approximately nineteen acres (the "19–acre parcel")—which are situated west of U.S. 41 about five miles south of the city limits of the City of Sarasota in Sarasota County. Eide also owns a parcel east of U.S. 41 which he leases to developers who have transformed it into a Kmart shopping center. Apoxsee designates this area as a village activity center around a regional center (the Sarasota Square Mall). Prior to the development of a sector plan for this area, the 19–acre parcel was zoned RSF–2 (residential, single family, 3.5 units/acre),

and the 14–acre parcel was zoned RMF–2 (residential, multi-family, 9 units/acre).

In 1984 a property owner in the area requested permission from Sarasota County to prepare a proposed sector plan. Eide discovered that the sector plan included his 14–acre parcel but not his 19–acre parcel. After a County official informed Eide that inclusion in the sector plan was the only way that his properties would ever be considered for commercial zoning in the future, he asked that the sector plan boundary be amended to include his larger property as well. The County amended the sector plan as per his request.

In 1986, because Eide wanted to take advantage of the favorable capital gains tax law, he complained that the landowners who were preparing the sector plan were taking too long; at his request, the County's professional planning staff undertook the completion of the plan. The completed sector plan identified three possible alternatives for future zoning; two of these alternatives recommended some of Eide's property for commercial development, while the third recommended that all of Eide's property remain residential (with the exception of the Kmart parcel). The sector plan's final recommendation adopted a hybrid of two of the alternatives; however, it recommended that Eide's parcels continue to be zoned residential. The sector plan also indicated that an amendment to Apoxsee designating the area as a community or town center would be appropriate in the future; however, the plan suggests that future commercial development should be located east of U.S. 41, and Eide's parcels are located to the west of 41. Sector Plan 84–2, pp. 47–48, 64, 93. On September 16, 1986, the County adopted the sector plan.

Before the completion of the sector plan, Eide filed a petition for the rezoning of his 14–acre parcel. However, a traffic study was required to accompany all rezoning petitions. After the County's planning

---

**2.** At trial, there was testimony that the 75 acres permitted for a village activity center was simply a guideline, not a cap on the amount of commercial acreage permissible. R5–65. However, the possibility of a flexible amount of commercial acreage is not vital to our holding, and we assume that the 75 acres allotted for village activity centers and the 125 acres allotted for community centers are caps.

staff returned the petition to Eide for a required traffic impact analysis, Eide voluntarily withdrew his petition. Eide never requested that his 19–acre parcel be considered for rezoning.

Challenging that the sector plan was unconstitutional as applied to his property,[3] Eide then filed a suit for declaratory and injunctive relief and compensatory damages under 42 U.S.C. § 1983[4] and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[5] Sarasota County raised several defenses to Eide's claims, including a challenge to Eide's assertion that the County had made a final decision concerning his property. The district court rejected this ripeness defense. After a jury trial, Eide was awarded $850,-000. In addition, the court enjoined the County from using any plan, ordinance, zoning code, or regulation to deny Eide commercial zoning.

We disagree with the district court's determination that this case was ripe for adjudication. Therefore, we reverse the district court's judgment and order that the Section 1983 claims be dismissed as not ripe.

## II. ANALYSIS

Before we can analyze the district court's decision, we must first determine what type of claim Eide is making. Eide's reason for bringing suit is that the County did not grant him commercial zoning, and he requests that the County be required to rezone his property commercial. For grievances similar to Eide's, there are four types of challenges which a plaintiff may bring.[6] We refer to these claims as just compensation, due process takings, arbitrary and capricious due process, and equal protection claims.

First, a plaintiff can claim that the regulation at issue has taken his or her property without just compensation in contravention of the Fifth Amendment.[7] *See Williamson County v. Hamilton Bank,* 473 U.S. 172, 186–97, 105 S.Ct. 3108, 3116–22, 87 L.Ed.2d 126 (1985) (Fifth Amendment claim not ripe for decision). In order to establish a violation of the just compensation clause, a landowner must demonstrate that his property was "taken," i.e., that the regulation "goes too far," and that there is no provision to award him just compensation. *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 533–34, 106 S.Ct. 2561, 2565–66, 91 L.Ed.2d 285 (1986); *Smithfield Concerned Citizens v. Town of Smithfield,* 719 F.Supp. 75, 77 (D.R.I.1989). The remedy for a violation of the Just Compensation Clause is money damages calculated by the value of the property rights taken and the duration of the taking. In order for such a claim to be ripe for adjudication, the landowner must overcome two hurdles: the final decision hurdle and the just compensation hurdle. The landowner must obtain a final decision regarding the application of the zoning ordinance or regulation to his or her property and utilize state procedures which provide

---

**3.** In the district court, Eide abandoned any claim of facial unconstitutionality.

**4.** 42 U.S.C. § 1983 (1981) provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**5.** The Fourteenth Amendment provides in relevant part:

No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
U.S. Const. amend. XIV, § 1.

**6.** In the following discussion, we consider only the standards that would be applied to a claim which involves a grievance similar to Eide's. We express no opinion as to what the standards would be for other types of claims such as physical taking and procedural due process claims.

**7.** The Fifth Amendment of the United States Constitution provides in relevant part:

[P]rivate property [shall not] be taken for public use, without just compensation.
U.S. Const. amend. V.

for obtaining just compensation. *Williamson County*, 105 S.Ct. at 3116–20. The final decision requirement includes a requirement that the property owner seek variances from the applicable regulations. *Williamson County*, 105 S.Ct. at 3117. The reason for the final decision requirement is that one of the factors significant to the adjudication of a just compensation claim is "the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations." *Williamson County*, 105 S.Ct. at 3119. This impact and interference cannot be ascertained until the local authority has determined the nature and extent of the development that will be permitted. *See MacDonald, Sommer & Frates*, 106 S.Ct. at 2567. In addition to the final decision requirement, a Fifth Amendment just compensation claim is not ripe until the landowner has pursued the available state procedures to obtain just compensation. *Williamson County*, 105 S.Ct. at 3120–22.

■ Second, a plaintiff can bring a claim that the application of the regulation goes so far and destroys the value of his or her property to such an extent that it has the same effect as a taking by eminent domain. Such an application would be an invalid exercise of the police power. We will call this type of claim a "due process takings" claim. The difference between a due process takings claim and a just compensation claim is that, for a due process takings claim, a successful suit would result in an invalidation of the local authority's application of the regulation and, perhaps, actual damages, whereas a just compensation claim is remedied by monetary compensation for the value taken.[8] *See First English Evangelical Lutheran Church v. Los Angeles County*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)

(temporary takings may be remedied by compensation); *Williamson County*, 105 S.Ct. at 3116, 3122 (recognizing such a due process claim, but holding the claim to be premature). For a due process takings claim to be ripe, courts apply the same final decision requirement as in the just compensation claim context. *Williamson County*, 105 S.Ct. at 3123; *Smithfield Concerned Citizens v. Town of Smithfield*, 719 F.Supp. 75, 81–82 (D.R.I.1989). Like the reasoning in the just compensation claim area, the reason for this requirement in the due process takings claim context is that a court cannot determine whether a regulation has gone too far unless the court knows how far the regulation goes. *See Williamson County*, 105 S.Ct. at 3123. In *Williamson County*, the Supreme Court did not discuss the applicability of the just compensation hurdle in its analysis of the due process takings claim presented in that case. 105 S.Ct. at 3123.

■ Third, a plaintiff may argue that the regulation is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, and is therefore an invalid exercise of the police power. *See Nectow v. City of Cambridge*, 277 U.S. 183, 236, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928); *Greenbriar v. City of Alabaster*, 881 F.2d 1570, 1577 (11th Cir.1989); *Stansberry v. Holmes*, 613 F.2d 1285, 1289 (5th Cir.), *cert. denied*, 449 U.S. 886, 101 S.Ct. 240, 66 L.Ed.2d 112 (1980); *but see Shelton v. City of College Station*, 780 F.2d 475, 482 (5th Cir.1986) (en banc) (zoning is quasi-legislative action, and, therefore, zoning decisions need only have conceivable rational basis), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566, 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986). We will refer to such a claim as an "arbitrary and capricious due

---

8. This distinction may be academic if the Supreme Court decides that a non-physical "taking" claim is properly redressed by only the Just Compensation Clause or only the Due Process Clause. Much legal debate has been generated over this issue; *see, e.g.,* Note, *Testing the Constitutional Validity of Land Use Regulations: Substantive Due Process as a Superior Alternative to Takings Analysis,* 57 Wash.L.Rev. 715 (1982); Note, *Balancing Private Loss Against Public Gain to Test for a Violation of Due Process or a Taking Without Just Compensation,* 54 Wash.L.Rev. 315 (1979); Comment, *Just Compensation or Just Invalidation: The Availability of a Damages Remedy in Challenging Land Use Regulations,* 29 UCLA L.Rev. 711 (1982); however, neither the Supreme Court nor this Circuit has yet addressed this issue, and we need not decide it in this case.

process" claim.[9] This claim is different from a due process takings claim. To prove the latter, a landowner must establish that the regulation goes "too far," destroying the value of the property to such an extent that it has the same effect as a taking by eminent domain. To prove an arbitrary and capricious due process claim, a plaintiff need only prove that the government has acted arbitrarily and capriciously.[10] Such a challenge may be either a facial or an as applied challenge. *Pennell v. City of San Jose*, 485 U.S. 1, 10–12, 108 S.Ct. 849, 857, 99 L.Ed.2d 1 (1988); *Weissman v. Fruchtman*, 700 F.Supp. 746, 752–53 (S.D.N.Y.1988). For a facial challenge, the remedy is the striking down of the regulation. *Weissman*, 700 F.Supp. at 753. In the case of an as applied challenge, the remedy is an injunction preventing the unconstitutional application of the regulation to plaintiff's property and/or damages resulting from the unconstitutional application. The ripeness test used in *Williamson County* has often been applied to as applied arbitrary and capricious due process claims. *See, e.g., Greenbriar*, 881 F.2d at 1573–77; *Weissman*, 700 F.Supp. at 753–54. However, this application of *Williamson County* is questionable since *Williamson County* involved a due process takings claim. 105 S.Ct. at 3114 n. 4, 3116, 3122. The appropriate ripeness analysis for an arbitrary and capricious due process claim is discussed below.

■ The fourth type of claim is that the regulation denies equal protection. If the plaintiff claims that the regulation acts against him or her because of race or another suspect class or that the regulation involves a fundamental right, then the regulation is subject to strict scrutiny. *See San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 16–17, 93 S.Ct. 1278, 1287–88, 36 L.Ed.2d 16 (1973) and cases cited therein. However, if the claim is simply that the regulation treats the plaintiff different from someone else and neither a suspect class nor a fundamental right is involved, the regulation (and its classification) must only be rationally related to a legitimate government purpose. *Fry v. City of Hayward*, 701 F.Supp. 179, 181 (N.D.Cal.1988). An equal protection claim can attack the statute on its face or as applied to the property involved. *Fry*, 701 F.Supp. at 181. The remedy for a facial challenge is to enjoin the local authority from enforcing the regulation, *see Fry*, 701 F.Supp. at 183, while the remedy for an as applied challenge is an injunction against the unconstitutional application of the regulation to the plaintiff's property.

Courts have confused the standards for the first three claims (just compensation, due process takings, and arbitrary and capricious due process), and often one cannot tell which claim has been brought or which standard is being applied. *See Smoke Rise, Inc. v. Washington Suburban Sanitary Comm'n*, 400 F.Supp. 1369 (D.Md. 1975) ("a claim of *deprivation* of property without due process cannot be blended as one and the same with the claim that property has been *taken* for public use, without just compensation." (emphasis in original)); *Weissman v. Fruchtman*, 700 F.Supp. 746, 754–55 (S.D.N.Y.1988) (assuming *Williamson County* applies to arbitrary and capricious due process claims). This court has itself confused due process takings and arbitrary and capricious due process claims. *Greenbriar v. City of Alabaster*, 881 F.2d 1570 (11th Cir.1989) (applying *Williamson County* to arbitrary and capricious due process claim).

This confusion may result in incorrect analyses of cases because different standards of ripeness are required for each of

---

**9.** Most courts have referred to this type of claim as a substantive due process claim. *See, e.g., Williamson County*, 105 S.Ct. at 3114 n. 4; *Greenbriar*, 881 F.2d at 1571–81; *Weissman v. Fruchtman*, 700 F.Supp. 746, 753 (S.D.N.Y. 1988). However, this terminology has contributed to the confusion between an arbitrary and capricious due process claim and a due process takings claim.

**10.** To illustrate, if a governmental entity has acted arbitrarily and capriciously (e.g. because of race) in the course of eminent domain proceedings, the fact that just compensation is paid would not undo the arbitrary act, nor cure the constitutional violation.

the three claims. A just compensation claim is ripe only when there has been a final decision and all state procedures for just compensation have been utilized. *Williamson County*, 105 S.Ct. at 3116. It is unclear whether, for a due process takings claim to be ripe, the landowner need only have received a final decision or whether the landowner must also overcome the just compensation hurdle. In discussing the due process takings claim in *Williamson County*, 105 S.Ct. at 3122–23, the Supreme Court discussed only the final decision hurdle. Courts have entertained facial arbitrary and capricious due process claims on the merits while simultaneously finding that the same landowner's just compensation claim, due process takings claim, or as applied arbitrary and capricious due process claim was premature. *See Pennell v. City of San Jose*, 485 U.S. 1, 9–12, 108 S.Ct. 849, 856–57, 99 L.Ed.2d 1 (1988) (facial arbitrary and capricious due process claims considered on merits while as applied equal protection and due process claims not ripe); *Smithfield Concerned Citizens v. Town of Smithfield*, 719 F.Supp. 75, 77–83 (D.R.I.1989) (facial arbitrary and capricious due process claim considered on merits while due process takings claim and just compensation claim premature); *but see Unity Ventures v. Lake County*, 841 F.2d 770, 775 (7th Cir.) (ripeness analysis for just compensation and due process takings claims applies to equal protection claims and arbitrary and capricious due process claims), *cert. denied*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375 (9th Cir.) (same), *cert. denied*, 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 106 (1988). We discuss below the appropriate ripeness analysis for an as applied arbitrary and capricious due process claim.

We must first determine under which category or categories Eide's claim fits. At trial, Eide argued (1) that the County's denial of commercial zoning for his property was arbitrary and capricious and (2) that

the distinction between his property and those properties which were designated commercial was not rationally related to a legitimate government purpose. The relief he requested was an injunction barring the County from using any ordinance, regulation, or land use plan to deny him commercial zoning. He also sought and received damages for the temporary loss of the value of his property as commercial for the period he was denied commercial zoning.[11]

Eide made no claim in his complaint or at trial that he was due just compensation for the "taking" of his property. Therefore, he is not making a just compensation claim. Eide does not make a claim that the regulation has restricted his use of the property to such an extent that the result can only be accomplished by eminent domain. In his complaint and in the pretrial stipulation, the words, "taking" and "eminent domain," do not even appear. Thus, Eide is not making a due process takings claim. It is clear that Eide's claim amounts to an arbitrary and capricious due process claim. He claims that the County's denial of commercial zoning was arbitrary and capricious and unrelated to public health, safety, and welfare. Therefore, the only due process claim he advocates is an arbitrary and capricious due process claim.

An arbitrary and capricious due process claim can be either a facial challenge to the regulation or a challenge to the regulation as applied to the plaintiff's property. For a facial challenge, Eide's claim would be that the mere adoption of the sector plan was arbitrary and capricious. *See Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 295–96, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981). However, as we noted above, Eide abandoned any claim of facial unconstitutionality in the district court. Therefore, Eide's claim amounts to an arbitrary and capricious due process challenge to the sector plan as applied to his property—i.e. that he was arbitrarily and capriciously denied commercial zoning

---

11. The fact that Eide sought and received damages measured by the value of his land as commercial as well as an injunction barring the County from denying him commercial zoning reveals the nature of his claim—i.e., that the gravamen of his claim is that he was denied commercial zoning.

because of the application of the sector plan to his property.[12]

In *Greenbriar v. City of Alabaster,* 881 F.2d 1570, 1572 (11th Cir.1989), the plaintiff, like Eide, challenged a zoning decision by asserting an as applied arbitrary and capricious due process claim. In its ripeness analysis, this court in *Greenbriar* applied the finality prong of the *Williamson County* standard, held that the zoning decision was final, and thus held that it was ripe. We are bound to follow the holding in *Greenbriar* and require that the zoning decision under attack be finally made and applied to the property at issue. *See Bon-*

*ner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). Although *Greenbriar* placed improper reliance on *Williamson County,*[13] we conclude for the reasons discussed below that the holding in *Greenbriar* was correct.

It is important first to note that Eide's challenge is an as applied challenge, not a facial challenge. In order to challenge the County's *application* of the sector plan to his property, Eide must first demonstrate that the sector plan has been *applied* to his property.[14] *See Pennell v. City of San Jose,* 485 U.S. 1, 108 S.Ct. 849, 857 n. 5, 99 L.Ed.2d 1 (1988) (dismissing as

12. Eide claims that he was denied equal protection because the County treated his property different from other properties for no rational reason. In other words, Eide claims that the County's classifications of residential and commercial properties are irrational. Because his equal protection claim relies upon the same rationale as his as applied arbitrary and capricious due process claim, we apply the same ripeness standard to both claims. *See Anthony v. Franklin County,* 799 F.2d 681, 686 (11th Cir.1986); *St. Clair v. City of Chico,* 880 F.2d 199, 202 (9th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 541, 107 L.Ed.2d 539 (1989); *Landmark Land Co. of Oklahoma v. Buchanan,* 874 F.2d 717, 722 (10th Cir.1989); *Herrington v. County of Sonoma,* 857 F.2d 567, 569 (9th Cir. 1988), *amending* 834 F.2d 1488 (1987), *cert. denied,* — U.S. —, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989); *Unity Ventures v. Lake County,* 841 F.2d 770, 775 (7th Cir.), *cert. denied,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Shelter Creek Dev. Corp. v. City of Oxnard,* 838 F.2d 375, 379 (9th Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 106 (1988); *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1455–56, *as amended,* 830 F.2d 968 (9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988); *Norco Construction v. King County,* 801 F.2d 1143, 1145 (9th Cir.1986); *but see Doe v. City of Butler,* 892 F.2d 315, 319 n. 2 (3d Cir.1989) (" '[u]nlike equal protection ... the focus of due process analysis is not whether the Township has irrationally distinguished between similarly situated classes, but whether it was irrational for the Township to have passed the law at all and to have applied it to [plaintiff].' *Rogin v. Bensalem Township,* 616 F.2d 680, 689 (3d Cir.1980)").

13. In *Greenbriar,* this court assumed that *Williamson County* controlled and required that the as applied arbitrary and capricious due process claim at issue had to overcome the *Williamson County* finality hurdle in order to be ripe. However, a closer reading of *Williamson County* reveals that it did not involve what we refer to

in this opinion as an arbitrary and capricious due process claim. In footnote 4, the Supreme Court clearly stated that it was not addressing a substantive due process claim (i.e., what we refer to in this opinion as an arbitrary and capricious due process claim). Rather, *Williamson County* involved the type of claim we have referred to in this opinion as a due process takings claim. 473 U.S. at 197–200, 105 S.Ct. at 3122–24. The rationale for requiring a final decision in the due process takings area is that the court cannot ascertain whether the regulation has gone "too far" until it can analyze the effect that the zoning decision has had on the value of the property. Thus, in *Williamson County,* the Supreme Court applied the finality prong of the ripeness analysis, just as it had for the just compensation claim. This rationale is not applicable to an as applied arbitrary and capricious due process claim. Such a claim does not have to establish that the regulation has gone "too far"; rather, a property owner's rights have been violated the moment the government acts in an arbitrary manner and (in an as applied challenge) that arbitrary action is applied to the owner's property. *See infra* n. 16. This court in *Greenbriar* erroneously assumed it was controlled by *Williamson County,* and thus erroneously used the *Williamson County* analysis. However, for the reasons explained in the text, our result in *Greenbriar* was correct in that a zoning decision cannot be the subject of an as applied challenge until the decision to apply the regulation to the plaintiff's property has been made.

14. This requirement does not apply to a facial challenge. *Fry v. City of Hayward,* 701 F.Supp. 179, 181 (N.D.Cal.1988). There is an important reason for this distinction: when a landowner makes a facial challenge, he or she argues that *any* application of the regulation is unconstitutional; for an as applied challenge, the landowner is attacking only the decision that applied the regulation to his or her property, not the regulation in general.

premature as applied arbitrary and capricious due process claim and as applied equal protection claim because plaintiffs did not identify any property taken by application of act); *Agins v. Tiburon*, 447 U.S. 255, 260–61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (discussing ripeness of as applied challenge in due process takings and just compensation areas); *Hodel v. Virginia Surface Mining and Reclamation Ass'n*, 452 U.S. 264, 101 S.Ct. 2352, 2370–71, 69 L.Ed.2d 1 (1981) (absent allegation that property has been taken by act, as applied just compensation claim is premature; but facial challenge can be considered); *Fry v. City of Hayward*, 701 F.Supp. 179, 181 (N.D.Cal.1988) (for as applied equal protection challenge, landowner must receive final decision on application of statute to property prior to bringing suit in federal court); *see also Hodel*, 101 S.Ct. at 2352–53 (Powell, J., concurring) (stressing that plaintiffs identified no specific property which was taken, and, therefore, majority's holding restricted to decision on facial constitutionality). If the authority has not reached a final decision with regard to the application of the regulation to the land-

owner's property, the landowner cannot assert an as applied challenge to the decision because, in effect, a decision has not yet been made. For example, in *Pennell*, the appellants challenged an ordinance that allowed the local authority to take a tenant's hardship into account in determining what size of rent increase to allow. The Court held that the appellants' just compensation claim was premature because there was no evidence that the "tenant hardship clause" had ever been relied on in making a decision. 108 S.Ct. at 856. In addition, for the same reasons, the Court dismissed the appellants' claim that the application of the provision to their property violated the due process and equal protection clauses.[15] 108 S.Ct. at 857 n. 5. However, the Court considered the merits of a facial challenge to the statute under the Equal Protection and Due Process Clauses. *Id.* Therefore, the Supreme Court's decision in *Pennell* supports our determination that, for as applied arbitrary and capricious due process claims to be ripe, the particular zoning decision being challenged must be finally applied to the property at issue.[16]

**15.** The Court did not make absolutely clear whether the due process claim was an arbitrary and capricious due process claim or a due process takings claim. However, since 1) the Court treated the equal protection claim in the same manner as the due process claim, 2) the appellants attacked the ordinance with a facial arbitrary and capricious due process claim, and 3) the Court's discussion does not indicate that appellants claimed the ordinance destroyed the value of their property to such an extent that it had the same effect as a taking by eminent domain, we find that the due process claim involved was an arbitrary and capricious due process claim.

**16.** As *Greenbriar* recognizes, the standard for a final decision in the as applied arbitrary and capricious due process area is not the same as that of the due process takings and just compensation areas. 881 F.2d at 1576 n. 11. In the areas of due process takings and just compensation, there are two parts to the final decision hurdle. First, the zoning decision must be finally made and applied to the property. Second, the local authority must have made all other decisions necessary for the court to determine whether the landowner has been deprived of substantially all economically beneficial value of the property. Therefore, for these claims to be ripe, the plaintiff is required to reapply for zoning in order to establish what extent of de-

velopment will be permitted and for a court to determine whether the regulation has gone "too far". *See MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 533–38, 106 S.Ct. 2561, 2566–68, 91 L.Ed.2d 285 (1986). On the other hand, with respect to an as applied arbitrary and capricious due process claim, the final decision hurdle is satisfied when the first prong is met—i.e., when the zoning decision being challenged is finally applied to the property. Thus, in an as applied arbitrary and capricious due process claim challenging a zoning decision denying commercial zoning, the landowner need only obtain a final decision denying commercial zoning. The *MacDonald* requirement does not apply to Eide's as applied arbitrary and capricious due process claim because Eide does not allege the deprivation of all beneficial use of his land, and, therefore, a court does not need the additional determination in order to adjudicate his claim. Once the local authority has made a final decision denying commercial zoning to Eide, Eide's as applied arbitrary and capricious due process claim will be ripe.

In addition, the just compensation hurdle applied in the just compensation claim context does not apply to arbitrary and capricious due process claims. *Greenbriar v. City of Alabaster*, 881 F.2d 1570, 1574 n. 8 (11th Cir.1989). The reason for this is that an arbitrary and capricious act by a government is unconstitutional

The ripeness of an as applied arbitrary and capricious due process claim depends upon the nature of the claim, which is often revealed by the remedy sought. We can conceive of an arbitrary and capricious due process claim in which the final decision requirement would be satisfied with a single arbitrary act. For example, if a landowner's initial application for commercial zoning had been rejected at a preliminary stage simply because the landowner was a redhead, the landowner's arbitrary and capricious due process claim challenging that action would be ripe. That decision can be immediately challenged because the arbitrary and capricious act has been applied to him. However, the remedy for the mere rejection of the redheaded landowner's application would not be an injunction requiring a grant of commercial zoning, but rather would be the overturning of the arbitrary decision, possibly an injunction against similar irrational decisions, and other remedies depending on the situation. The landowner could not prove the damages that Eide seeks—i.e. commercial zoning—without first claiming and proving a final decision by the local authority denying commercial zoning.

In this case, Eide does not merely challenge the rationality of the sector plan. Rather, he asserts that he was arbitrarily denied commercial zoning, and he proved and received damages for the temporary loss of the value of his property as commercial property. As demonstrated above, such an as applied arbitrary and capricious

due process claim is not ripe until the decision denying commercial zoning has been finally made and applied to the property.

■ Eide has not met this burden. He has not submitted even a single plan for the commercial development of his properties. He has not submitted a petition to rezone his properties from their present residential zoning to commercial zoning. Therefore, the County has not been given an opportunity to apply the sector plan to his property.

Eide argues that his reasons for wanting his land rezoned commercial were presented to the Planning Commission and to the County during the proceedings which culminated in the adoption of the sector plan. He argues that his reasons were fully considered and rejected by the appropriate decision-making bodies, and thus it would be futile for him to pursue further action before the County. In addition, Eide argues that, because Florida law requires that all future zoning be consistent with the sector plan and because the sector plan designates his property residential, commercial development of his property would obviously be inconsistent with the sector plan and, therefore, contrary to Florida law.

■ The so-called "futility exception" to the final decision requirement for due process takings and just compensation claims does excuse the repeated submission of development plans where the submission would be futile.[17] See Shelter Creek Dev.

even if the government pays just compensation. A property owner's rights are violated "the moment a governmental decision affecting his [or her] property has been made in an arbitrary and capricious manner, regardless of whether he [or she] is later compensated for that violation." 881 F.2d at 1574 n. 8.

17. In as applied arbitrary and capricious due process challenges to ordinances and land use plans, the Seventh and Ninth Circuits have held that, until "at least one 'meaningful application'" has been submitted for the local authority's review and application of the zoning regulations, futility is not established and a constitutional challenge to local zoning may not be entertained. Shelter Creek, 838 F.2d at 379; see Unity Ventures v. Lake County, 841 F.2d 770, 775 (7th Cir.), cert. denied, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); Herrington v. So-

noma County, 834 F.2d 1488, 1494–95 (9th Cir. 1987), as amended, 857 F.2d 567, 569 (9th Cir. 1988) (stating: "a property owner cannot rely on the futility exception until he or she makes at least one meaningful application" but holding that the claim was ripe for adjudication), cert. denied, — U.S. ——, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989).

The Seventh and Ninth Circuits' requirement of a final decision involving a specific development plan before suit may be filed is supported by an important reason: zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts on the merits prior to a court suit. For the reasons stated in the text, we are not convinced that the facts of this case demonstrate that it would be futile for Eide to pursue commercial zoning. Therefore,

*Corp. v. City of Oxnard,* 838 F.2d 375, 377 (9th Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 106 (1988). However, we are not satisfied that the consideration of Eide's arguments, as merely a few of the many matters considered as part of the overall plan, establishes that the County would not grant him commercial zoning if he applied for rezoning.

■ We therefore turn to Eide's argument that further proceedings before the County would be futile because the County is constrained by Florida law requiring that all future zoning be consistent with the sector plan and that commercial zoning of his property would be inconsistent with that plan. The major flaw in this argument is that Eide's determination of what is inconsistent with the sector plan is not controlling here; the County and the Florida courts are arbiters of what is consistent. As stated above, the sector plan does not rezone any land commercial or noncommercial; it merely dictates that all future development be consistent with it.

In this regard, there is a split in the Florida state courts over what is meant by the requirement of consistency. In *Southwest Ranches Homeowners Ass'n v. Broward County,* 502 So.2d 931, 935 (Fla. 4th DCA 1987), Florida's Fourth District held that the land use element of a comprehensive plan is not the "sole, controlling document with which subsequent plan elements ha[ve] to comply." Instead, the court required that a county's approval of a zoning more intensive than that envisioned by the comprehensive plan be considered in light of all of the elements of the comprehensive plan, and not simply rejected on the basis of a single element. On the other hand, in *Machado v. Musgrove,* 519 So.2d 629 (Fla. 3d DCA 1987), *adopted en banc,* 519 So.2d 629 (Fla. 3d DCA), *review denied,* 529 So.2d 693, 694 (Fla.1988), the Third District required strict adherence to all elements of the comprehensive plan including the land use element. Neither of these Florida court decisions are binding in Sarasota County. In addition, during a

we need not decide in this case whether to adopt the per se requirement in the Seventh and Ninth Circuits that at least one meaningful ap-

County Commission hearing introduced at trial, the Commission Chairman stated: "Commercial in that area is not part of the Sector Plan, but that doesn't stop the Board from reversing the staff recommendation." Therefore, since the sector plan did not rezone any land, but rather, it only adopted plans for future rezoning, the County could determine that commercial development of Eide's parcels is consistent with the sector plan and would not violate the 75 acre "cap"; thus, it is premature to determine that such a rezoning would be inconsistent with the plan.

Decisions on ripeness issues are fact-sensitive. On the particular circumstances of this case and for the foregoing reasons, we conclude that the instant Section 1983 claims are not ripe. Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

SHOOB, District Judge, concurring:

I concur with the majority opinion insofar as it provides an appropriate, though unwieldy, framework for analysis of ripeness issues. The majority probably reaches the correct conclusion in light of this Court's decision in *Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570 (11th Cir.1989). I write separately because, while the majority concedes that "[d]ecisions on ripeness issues are fact-sensitive," I do not believe the applicable law reflects or incorporates sufficient deference to the trial court's factual determinations.

The deficiencies of the ripeness standard in zoning cases are most apparent with regard to the "futility exception." To qualify for this exception to the final decision requirement, at least two circuits demand submission of one meaningful zoning application. *See Unity Ventures v. County of Lake,* 841 F.2d 770 (7th Cir.), *cert. denied,* 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, *as amended,* 830 F.2d 968

plication be submitted to the local zoning authority before an as applied claim is ripe for adjudication.

(9th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988). That often logical approach, however, fails to account for specific facts, which, in individual cases, might render even a single application a waste of time.[1]

The district court concluded that the adoption of a sector plan by appellants was tantamount to an adverse zoning decision. The district court further found, in view of the circumstances surrounding adoption of that sector plan, that any attempt to obtain a more favorable zoning decision would be futile. I would not disturb lightly the conclusions of the district court, which is infinitely more knowledgeable about the practical realities in this case. Moreover, where such factual considerations are involved, I do not believe the appellate court should substitute its detached view of whether further participation in the zoning process would be futile for the informed findings of the trial court.

For the foregoing reasons, I concur in the result only.

---

1. Although it does not reach a decision on this issue, the majority cites with approval the position of the Seventh and Ninth Circuits. In addition, by stating that "we are not convinced that the facts of this case demonstrate that it would be futile for Eide to pursue commercial zoning" the majority demonstrates a similar lack of deference to the district court's factual findings.