**CHRISTOPHER LAKE DEVELOPMENT COMPANY; J.H. Berra Construction Company, Inc.; Richard Piatchek; William G. Cocos, Jr., as the Partners in Christopher Lake Development Company, a Missouri General Partnership, Plaintiffs–Appellants,**

v.

**ST. LOUIS COUNTY, Defendant–Appellee.**

No. 93–4080.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1994.

Decided Sept. 23, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 14, 1994.

Ross H. Briggs, St. Louis, MO, argued, for appellants.

Christopher J. McCarthy, Clayton, MO, argued, for appellee.

Before RICHARD SHEPPARD ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Christopher Lake Development Company and its general partners (collectively the "Partnership") brought this 42 U.S.C. § 1983 action against St. Louis County, challenging a land development specification. The Partnership alleged violations of the fourteenth amendment's equal protection clause, of the fourteenth and fifth amendments' due process clauses, and of state law. The district court dismissed the Partnership's "as applied" claims because they were not ripe for adjudication, dismissed the facial challenge for failure to state a claim upon which relief could be granted, and dismissed the pendent state claim. We reverse in part, affirm in part, and remand for further proceedings.

## I. BACKGROUND

### A. Factual History

The Partnership purchased forty-two acres of property in St. Louis County for the devel-

opment of two residential communities, Waterford Estates and Christopher Lake Estates. A portion of this land contained sinkholes, which are natural holes in the limestone that provide underground drainage for storm water. The County approved the Partnership's property for residential use and preliminarily approved it for "planned environmental units" or subdivisions. The County's preliminary approval was conditioned on its approval of the Partnership's site development plans.[1]

Before receiving site development approval, the County required the Partnership to make adequate provisions for the disposal of storm water.[2] The County empowered the Department of Highways and Traffic (the "Department") to create specifications for the disposal of storm water.[3] The Department promulgated Design Criteria 5.800:

SINKHOLES.—The following shall be included and/or observed:

1. An Engineering Report shall be submitted indicating the existing sinkhole conditions, intended use and proposed treatment to be accomplished as part of the development.

2. A sinkhole can be used as a point of drainage, provided that an *adequately sized outfall pipe is provided* to an existing natural discharge point, such as a ditch, creek, river, etc.

3. Where required sinkholes within a development shall be treated by approved methods.

*Id.* (emphasis added).

The County's application of Design Criteria 5.800(2) (the "Criteria") required the Partnership to provide a drainage system from the sinkholes on its property to the sinkholes on neighboring properties, and eventually leading to a natural discharge point. In this case, the "natural discharge point" was the Meramec River. The Partnership complained that the Criteria's requirements of an "adequately sized outfall pipe" to a "natural discharge point" resulted in it being forced to purchase a drainage system for the entire watershed area.[4]

The Partnership submitted site development plans for Waterford Estates and Christopher Lake Estates, but the County, through the Department, denied the plans for noncompliance with the Criteria. The Partnership then requested the County to grant hardship relief from the Criteria's requirements, and the County referred the matter to its Public Improvements Committee (the "PIC").[5]

At a hearing before the PIC on March 12, 1987, the Partnership suggested, among other proposed solutions to the drainage problem,[6] that it only be required to bear a proportionate share of the construction costs required by its compliance with the Criteria.

1. The ordinance granting preliminary approval for Waterford Estates provided:

Prior to approval of Site Development Plans, the developer shall provide the following:
Stormwater
a. Submit to the Planning Commission a preliminary engineering plan approved by the Department of Highways and Traffic showing that adequate handling of the stormwater drainage of the site is provided.
(1) The developer is required to provide adequate stormwater systems in accordance with St. Louis County Standards.
(2) All stormwater shall be discharged at an adequate natural discharge point. Note: Sinkholes are not adequate discharge points.
St. Louis County, Mo., Ordinance 12,290 ¶ 6; *see also* St. Louis County, Mo., Code § 1005.070 (1985).

2. "Storm drainage improvements consisting of storm sewer systems or open channels shall adequately drain the areas being developed.... All storm water shall be discharged at an adequate

natural discharge point." St. Louis County, Mo., Code § 1005.290(1) (1985).

3. "Adequate provisions shall be made for this disposal of storm water, in accordance with the specifications and standards of ... the Department of Highways and Traffic." St. Louis County, Mo., Code § 1005.290(4) (1985).

4. Thirty-one acres of Waterford Estates and seven acres of Christopher Lake Estates are located in this particular 301 acre watershed, making the Partnership's total property interest in the area approximately twelve percent.

5. The PIC is responsible for considering questions or matters that relate to the Department of Highways and Traffic. St. Louis County, Mo., Code § 102.100(a) (1985).

6. The Partnership also suggested developing an on-site detention pond to hold the storm water from Waterford Estates and pumping the storm water from Waterford Estates to a natural discharge point; these plans were rejected.

At this hearing the Department Director stated, "[w]e're not asking [the Partnership] to bear the full cost. We're saying 'you bear the full cost upfront but you may recover.' ... [the Partnership] builds the system upfront and [it] deserves reimbursement from the others in this drainage area."

After the PIC hearing, the County approved the site development plan for Christopher Lake Estates and agreed to accept $27,600.00 ($4000 per acre) in escrow toward the future construction of a drainage system. The Partnership attempted to arrange a similar escrow account for Waterford Estates; however, the County declined to accept the funds and refused to approve the Waterford Estates' plan until the drainage system was completed.[7] Finally, in January 1988, the Partnership obtained the necessary easements from the neighboring land owners and constructed a $465,500 drainage system. After the construction was completed, the County approved the Waterford Estates site development plan.

### B. Procedural History

The Partnership's first lawsuit against the County focused on three claims: (1) the County discriminated against the Partnership in violation of the equal protection clause of the fourteenth amendment, (2) the County took the Partnership's property without just compensation in violation of Article 1, § 26 of the Missouri Constitution,[8] and, alternatively, (3) the County discriminated against the Partnership in violation of the due process clauses of the fifth and fourteenth amendments. The district court determined that the Partnership had failed to obtain the County's final decision on the Criteria's application and dismissed the complaint because it was not ripe for adjudication.[9] (*Christopher Lake I*).

The Partnership then notified the County Director of Planning, the County Executive, and each member of the County Council that it sought a "variance" or exception from the hardship of its compliance with the Criteria. As potential sources for reimbursement, the Partnership suggested: government funds dedicated to drainage construction; contributions from future developers in the same area; and revenues from the imposition of a special tax. The County decided that because the drainage system was already completed, the Partnership's requests for hardship relief should be denied.

The Partnership filed a second lawsuit against the County and repeated its previous allegations. The Partnership's amended complaint also averred that the Criteria were facially unconstitutional. The County argued that the as applied claims were not ripe and could never be ripe because the Partnership's construction of the storm water relief system precluded the County from ever reaching a final decision on the Criteria's application. The County also suggested that the Partnership's facial claim was actually a challenge to the Criteria's application. The court dismissed the applied challenges as unripe and dismissed the facial challenge for failure to state a claim upon which relief could be granted. (*Christopher Lake II*). The Partnership appeals.

## II. DISCUSSION

### A. The "As Applied" Claims
#### 1. Ripeness

 In order to establish that a claim is ripe for judicial review, a plaintiff must meet two requirements. First, it must demonstrate a sufficiently concrete case or controversy within the meaning of Article III of the Constitution.[10] *Bob's Home Service, Inc. v. Warren County*, 755 F.2d 625, 627 (8th Cir.

---

7. A January 26, 1988, letter to the Partnership from the Department Director stated:

 The site plan as presented *totally ignores this Department's previous comments, meetings with your engineer and presentation at the Public Improvements Committee meeting of March 12, 1987....* [the site plan] is in direct conflict with the Ordinance Conditions [Design Criteria 5.800] and is not acceptable to this Department.

8. "That private property shall not be taken or damaged for public use without just compensation." Mo. Const., art. 1, § 26.

9. The Partnership appealed the district court's order, and we dismissed this appeal without prejudice to the filing of a subsequent lawsuit (*Christopher Lake II*) and appeal on the issue of ripeness.

10. "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution...." U.S. Const. art. III, § 2.

1985). Second, prudential considerations must justify the present exercise of judicial power. *Id. See Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1289–90 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993) (recognizing that the ripeness doctrine is grounded in both prudential considerations and the case or controversy requirement). The concept of ripeness is particularly important in cases challenging land use regulations and results in a fact-sensitive inquiry. *See Eide v. Sarasota County*, 908 F.2d 716, 720–24 (11th Cir. 1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991) (providing a detailed discussion of the differing ripeness analyses depending on the constitutional theories involved and the remedies that a plaintiff is seeking).

■ The Partnership has alleged that the County's approval for its development of Waterford Estates was conditioned on the Partnership's construction of a comprehensive drainage system for the entire watershed area. The Partnership claims that the County's unconstitutional application of the Criteria violated its rights to equal protection under the fourteenth amendment and took the Partnership's property without due process in violation of the fifth and fourteenth amendments.[11] The district court relied on *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 193, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985), in concluding that the County did not arrive "at a definitive position on the issue that inflicts an actual, concrete injury." Because the court did not consider matters outside the pleadings, we review its dismissal for lack of subject matter jurisdiction de novo. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir.1990) (discussing the varying standards of review under Fed. R.Civ.P. 12(b)(1)).

"[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County*, 473 U.S. at 186, 105 S.Ct. at 3116. Although we recognize that *Williamson County* involved claims that the denial of a zoning permit resulted in a taking without just compensation in violation of the fifth amendment and a fourteenth amendment deprivation of property without due process of law, *id.* at 197, 105 S.Ct. at 3122,[12] the same kind of finality requirements guide us in determining that the Partnership's claims are ripe for review. In order "for as applied arbitrary and capricious due process [and equal protection] claims to be ripe, the particular zoning decision being challenged must be finally applied to the property at issue." *Eide*, 908 F.2d at 724–25. We conclude that in order for the Partnership's as applied claims to be ripe for review, the County must have arrived at a definite position on the Criteria's application to Waterford Estates that inflicted an actual, concrete injury to the Partnership. *Williamson*, 473 U.S. at 193, 105 S.Ct. at 3120; *Eide*, 908 F.2d at 724–25.

■ The County argues that the Partnership's efforts before the PIC were ineffective because the PIC is not composed of enough County Council members to have decision-making authority. St. Louis County, Mo., Code §§ 2.020, 2.080 (1985). Furthermore, the Partnership's failure to seek a variance from the Board of Zoning Adjustment or the Director of Planning[13] before its construction of the drainage system prevents this lawsuit from ever becoming ripe for review. Finally, the County denies that it has the authority to grant post-construction relief or recoupment.[14]

11. We note that although the Partnership has alleged that the County's actions constituted a taking without just compensation in violation of the Missouri Constitution, the Partnership has not made a fifth amendment claim that it was denied just compensation for the "taking" of its property.

12. The Court did not address the claims that the application of the regulation violated the developer's rights to substantive and procedural due process and denied it equal protection. *William-*

son County, 473 U.S. at 182 n. 4, 105 S.Ct. at 3114 n. 4.

13. The County has authorized the Board of Zoning Adjustment and the Director of Planning to grant variances from zoning requirements under certain circumstances. St. Louis Co., Mo., Code §§ 1004.070(8), 1005.380 (1985).

14. Because we dismissed *Christopher Lake I* without prejudice to the filing of a subsequent

We believe that the Partnership obtained the County's final decision regarding the Criteria's application to Waterford Estates. The Partnership made a valid request for hardship relief from the Criteria's stringent requirements when it appeared before the PIC. The efficacy of the Partnership's request is demonstrated by the fact that following this meeting, the County granted relief for the Christopher Lakes project. However, the County continued to condition its approval for Waterford Estates on the Partnership's purchase of a comprehensive drainage system. The County's argument that appearing before the PIC is not an appropriate vehicle for obtaining relief is also belied by the fact that after referrals to the PIC, the County has granted relief from the Criteria's requirements to at least six other developers. The Partnership can hardly be condemned for utilizing a process that the County had recommended and encouraged as a means of receiving relief from the Criteria's requirements. Therefore, the arguments that the Partnership should have also sought relief from Board of Zoning Adjustment or the Director of Planning are unavailing.

The ripeness doctrine requires not only that the County arrive at a final, definitive position, but also that its decision inflicts an actual, concrete injury. The County's application of the Criteria ripened into a concrete injury when the County refused to reimburse the Partnership for its disproportionate expenditures—a remedy which the County had suggested at the PIC meeting. The Partnership has demonstrated several instances where the County has allowed post-construction relief from the Criteria's requirements. In these cases, the County either subsidized the drainage construction or refunded the developers' costs in excess of their pro rata shares. Contrary to the County's arguments, the County Council is authorized to appropriate money for the payment of expenses for any public purpose, which would include funding the reimbursement for the Partnership's disproportionate expenditures. St. Louis County, Mo., Code § 2.180(2).

We are persuaded that the County has arrived at a definite position on an issue that

inflicts an actual, concrete injury to the Partnership and that we will be in no better position later than we are now to decide this question. See Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978). Therefore, we hold the as applied claims are presently ripe for adjudication.

### 2. Equal Protection and Due Process Claims

■ The Partnership contends that the County's application of the Criteria violated the equal protection clause because it imposed the entire economic burden for a public improvement upon a single landowner. When the distinctive treatment at issue does not involve a fundamental right or suspect classification, governmental decisions are presumptively constitutional and need only to "be rationally related to a legitimate state interest." City of New Orleans v. Dukes, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976).

■ However, even assuming the legitimacy of the County's purpose in requiring a drainage system, the application of the Criteria may violate the equal protection clause. "If the [property owners] were being singled out to bear the burden of [the State's] attempt to remedy these problems, although they had not contributed to it more than other coastal landowners, the State's action, even if otherwise valid, might violate ... the Equal Protection Clause." Nollan v. California Coastal Comm'n, 483 U.S. 825, 835 n. 4, 107 S.Ct. 3141, 3148 n. 4, 97 L.Ed.2d 677 (1987). Although the County's objective to prevent flooding may be rational, it may not be rational to single out the Partnership to provide the entire drainage system.

The Partnership also claims the County's application of the Criteria was a taking without due process. Courts have described two different theories that apply to the Partnership's allegation that the County's actions violated due process. First, a plaintiff can claim that the application of the regulation goes so far that it destroys the owner's prop-

lawsuit and appeal on the issue of ripeness, the County's res judicata arguments are without

merit.

**1275**

erty value. *See Eide,* 908 F.2d at 720–22 (describing this as a due process takings claim). Second, the plaintiff can allege that the regulation is arbitrary, irrational, and not substantially related to a legitimate governmental purpose. *See id.* (describing this as an arbitrary and capricious due process claim); *see also Del Monte Dunes v. City of Monterey,* 920 F.2d 1496, 1508 (9th Cir.1990) (city council actions that are not for valid regulatory reasons are a violation of the developers' substantive due process rights).

■ Because the district court dismissed the Partnership's complaint without reaching the merits of these issues, we reverse and remand the Partnership's as applied claims.[15] Furthermore, from our review of the record, the County has forced the Partnership to bear a burden that should fairly have been allocated throughout the entire watershed area. "A strong public desire to improve the public condition will not warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Dolan v. City of Tigard,* — U.S. ——, ——, 114 S.Ct. 2309, 2322, 129 L.Ed.2d 304 (1994) (quotation omitted). We believe that the Partnership is entitled to recoup the portion of its expenditures in excess of its pro rata share and remand to the district court to determine the details and amounts.

### B. The Facial Claim

■ The Partnership alleges that the Criteria, on their face, violate the equal protection clause. The Partnership claims that the enactment of the Criteria creates a financial obligation for the first developer in a watershed area to construct a drainage system for the whole area. In order to state a facial challenge to a statute or regulation, the plaintiff must assert that "*any* application of the regulation is unconstitutional." *Eide,* 908 F.2d at 724 n. 14. We agree with the district court that the Partnership has not demonstrated a facial challenge to the Criteria. Therefore, the district court's dismissal of the Partnership's facial challenge is affirmed.

**15.** Although neither party discussed the application of Mo. Const. art. 1, § 26 to this case, we

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's judgment and remand this case for further proceedings consistent with this opinion.

also remand this as applied issue to the district court.